**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

EDWARD ARTHUR )
)
    Plaintiff, )
)
v. )    Civil Action No. 02-CV-2931
)
THE UNITED STATES OF AMERICA )
)
    Defendant )
)

---

**PLAINTIFF EDWARD ARTHUR S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT THE UNITED STATES
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Plaintiff, through his undersigned attorneys, submits this Memorandum Of Law In Opposition To Defendant The United States Motion To Dismiss The First Amended Complaint.

**I.     FACTS AND PROCEDURAL HISTORY**

This case was originally filed as a Jones Act (46 U.S.C. § 688) case against Maersk, Inc. and Dyn Corp Technical Services.  This Court is already aware generally of the facts and procedural history of the circumstances which resulted in the Court granting Plaintiff leave to amend his Complaint to add the United States as a Defendant, as well as the Court s subsequent grant of summary judgment in favor of Defendants Maersk and Dyn Marine.  Accordingly, Plaintiff will not repeat here those facts or the lengthy procedural history which has lead to the present status of the case.

Plaintiff moved pursuant to Fed. R. Civ. P. 15 to amend his complaint to add The United States of America ( Defendant  or  United States ) as a Defendant, which

motion was granted by the Court on May 6, 2003 (See, Order granting Plaintiff s Motion attached hereto as **Exhibit 1** ).  Plaintiff filed his First Amended Complaint (attached hereto as **Exhibit 2** ) on May 13, 2003 (in compliance with the Court s directive to file within seven business days of the Order) and served the United States of America with the First Amended Complaint within a few days after filing.[1]  Now Defendant United States brings a Motion To Dismiss (or alternatively a Motion for Summary Judgment) seeking to dismiss Plaintiff s claims.  This Motion should be denied in either form, for the reasons set forth below.

II.    **ARGUMENT**

    A.    **Defendant s Motion Raises The Exact Same Arguments Which The Court Considered And Rejected At The Time Maersk And Dyn Marine Opposed Plaintiff s Motion To Amend To Add The United States.**

    At the time Plaintiff sought leave to amend his Complaint to add the United States, the Defendants Maersk and Dyn Marine made the very same arguments opposing leave to amend that the United States now makes in seeking dismissal of the case.  The main thrust of Defendants Maersk and Dyn Marine s arguments was that permitting Plaintiff to amend his Complaint to add the United States as a Defendant would be  futile  because his claims would be time-barred.   Defendants Maersk and Dyn Marine made exactly the same arguments that the United States (through the same legal counsel) seeks to make here, specifically that Plaintiff should have known that the United States was a proper Defendant (despite the Maersk and Dyn Marine

---

[1]  Defendant United States does not contend that service was made either in an untimely or improper fashion.

defendants  violation of the Federal Rules of Civil Procedure by failing to make appropriate and timely initial disclosures) and that the Plaintiff s allegations should not  relate back  pursuant to Federal Rules of Civil Procedure 15(c)(3).  The Court rejected those arguments back then and granted Plaintiff s Motion to Amend.  Likewise, the Court should again reject those arguments here.  The only  new  argument here is Defendant United States  argument on venue which Plaintiff addresses later in this brief.

**B.**  **Standards For Adjudicating Defendant s Motion**

Defendant s Motion is posed as a Motion To Dismiss or alternatively as a Motion for Summary Judgment.  Depending on how the Court considers the Motion, slightly different standards apply.

**1.**  **Standards For Evaluating Motion To Dismiss**

Under application of the prevailing case law in this Circuit, Plaintiff has stated claims in his First Amended Complaint for which relief may be granted.  In reviewing a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the nonmoving party.  Wisniewski v. Johns-Manville Corp., 759 F.2d 271 (3d Cir. 1985).  Moreover, a motion to dismiss for failure to state a claim may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them as true and viewing them in the light most favorable to the plaintiff, the plaintiff is not entitled to relief.  Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 167 (3d Cir. 2002).

### 2.   Motion For Summary Judgment Standards

If this Court chooses to look beyond the First Amended Complaint and consider Defendant s motion as a Motion For Summary Judgment, the motion should nonetheless be denied.  Summary Judgment should be granted only where no genuine issue of material fact exists for resolution at trial and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of any genuine issues of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the movant has produced evidence in support of summary judgment, then the non-moving party may not rest on the allegations set forth in its pleadings but must counter with evidence demonstrating a genuine issue of fact.  Fed. R. Civ. P. 56(e).

### C.   Plaintiff s Claims Survive Regardless Of Whether A Motion To Dismiss Or Summary Judgment Standard Is Applied.

Plaintiff is entitled to relief under his First Amended Complaint, particularly if the Court assumes that all of Plaintiff s factual allegations are true.  In his First Amended Complaint, Plaintiff alleges claims against the United States for injuries which occurred while working as a seaman while employed by Defendant United States  contractors and on various ships apparently owned by Defendant.  Those claims are for: (1) failure to pay maintenance and cure, (2) unseaworthiness and (3) negligence.  Plaintiff will establish the viability of each of the three claims.

### 1.   Failure To Pay Maintenance And Cure

Plaintiff s claims for Defendant s failure to pay maintenance and cure survive regardless of whether considers Defendant s Motion as one to dismiss under Rule 12(b)

or for summary judgment under Rule 56. The only contention which Defendant makes which is specific to Plaintiff s maintenance and cure claim is found on Page 7 of Defendant s Memorandum in footnote 2, which states: Although Arthur may assert that the two-year statute of limitations of the Public Vessels Act does not apply to maintenance and cure claims, several courts have concluded that the two-year statute of limitations does apply to such claims. Defendant s argument is erroneous and it conveniently disregards the precise rulings in those cases, as well as the fact that several courts, including the Third Circuit have held that the duty to pay maintenance and cure is a continuing obligation such that Defendant s statute of limitations argument is defeated.

For example, in <u>Rashidi</u>, the Fifth Circuit applied the two-year statute of limitations (as the Defendant did argue), but Defendant neglected to mention that the Fifth Circuit began the running of the two-year statute not at the date of injury (March,1991), but instead at the date when the plaintiff reached maximum medical cure (March, 1992). <u>Rashidi</u>, 96 F.3d at 125-127.[2] Here, Defendant United States makes no contention that Plaintiff Arthur has reached maximum medical care, and in fact, the only evidence in this case strongly suggests that Plaintiff Arthur has not reached maximum medical cure.

On March 12, 2002, Maersk s Claims Administrator, Cathy O Connell wrote

---

[2] Likewise, <u>McMahon v. United States</u>, 342 U.S. 25 (1951) has no applicability here. <u>McMahon</u> involved a claim under the Clarification Act that involved required the plaintiff to file an administrative claim prior to filing suit against the United States. 342 U.S. at 25-27. Thus, the legal question involved was whether the two-year statute of limitations ran from the date of injury or the date the claim was administrative disallowed. <u>Id</u>. <u>McMahon</u> is not factually or legally similar to the case <u>at</u> <u>bar</u>.

Plaintiff Arthur s physician Juliet DeCampos, M.D. a letter asking both: (1) if it was Dr.

De Campos opinion that Arthur s knee problems were not the result of an injury but due

to degenerative disease, and (2) whether Arthur has reached maximum medical

improvement.  See March 12, 2002 letter from Cathy O Connell attached hereto as

**Exhibit 3** .  Dr. De Campos emphatically rejected this suggestion in a March 19, 2002

letter to O Connell in which Dr. De Campos stated:

> Regarding your letter of March 12, 2002.
>
> Your [sic] are asking if it is my opinion if Mr. Arthur s knee
> problems are not the result of injury, but due to progressive
> degenerative disease of osteoarthritis.  This is wrong.  This
> patient has posttraumatic arthritis, i.e. traumatic arthropathy,
> i.e. arthritis initiated by trauma to the articular cartilage of his
> knee.  <u>He has not reached maximum medical improvement
> and will not so until he has the final treatment which allows
> improvement of his pain and function for a reasonable
> period of time</u>.

See, March 19, 2002 letter from Juliet De Campos, M.D., attached hereto as **Exhibit**

**4** .  (emphasis added).  Thus, the letter establishes that Plaintiff Arthur had not

reached maximum medical improvement as of March 19, 2002.  Accordingly, if the

Court were to follow <u>Rashidi</u>, as Defendant urges, then Plaintiff has easily satisfied the

two-year statute of limitations for filing his maintenance and cure claim.

Indeed, because maintenance and cure is considered by many courts, including

the Third Circuit, to be a continuing obligation, Plaintiff asserts that Defendant s

obligation to pay maintenance and cure continues through the current time and until a

future date when Plaintiff Arthur is considered to have reached maximum medical

improvement.  An obligation to furnish maintenance and cure continues  until the

6

seaman has reached the point of maximum cure, that is until the seaman is cured or his

condition is permanent and incurable.    O Connell v. Interocean Management Corp., 90

F.3d 82, 84 (3d Cir. 1996).  In MacInnes v. United States, 189 F.2d 733 (1st Cir. 1951),

the First Circuit held because maintenance and cure is a continuing obligation, then the

Plaintiff could recover maintenance and cure for two-years backward from the time of

filing suit:

> The obligation of the shipowner to supply maintenance and
> cure to a seaman injured in the service of the ship is a
> continuing one under the general maritime law.  On this
> count, the seaman is entitled to recover for the value of
> whatever maintenance and cure the shipowner had the
> continuing duty to supply during the two-year period prior to
> the date of filing the libel.

MacInnes, 189 F.2d at 736.

Therefore, because maintenance and cure is a obligation which continues until

the plaintiff has reached the point of maximum cure, and there is no evidence that the

Defendant has provided or can provide to establish that Plaintiff Arthur has reached

maximum cure, then Defendant United States cannot assert that Plaintiff s maintenance

and cure claim is barred by a two-year statute of limitations.[3]

Even in a worst case scenario, where the Court concluded that the Court should

apply a two-year statute of limitations on Plaintiff s maintenance and cure claims, there

is a question of fact as to when the Defendant United States agent, Maersk, initiated its

---

[3]  It should also be noted that since seamen are viewed as  wards of the
admiralty courts , the Supreme Court instructs that in determining maintenance and
cure issues all ambiguities or doubts are resolved in favor of the seaman.  Nasser v.
CSX Lines, LLC, 191 F. Supp. 2d 307, 316 (E.D.N.Y. 2002), quoting Vaughan v.
Atkinson, 369 U.S. 527, 532 (1962).

actions of neglecting or refusing to pay maintenance and cure, such that there is a

legitimate question as to when that statute of limitations could have begun to run.[4]

Plaintiff Arthur s W-2 Statement for year 2001 (attached as **Exhibit   5"** hereto)

establishes that Maersk made payments to Arthur totaling $8,725.51 for  wages and

other compensation.   This W-2 indicates that Maersk did not refuse or refrain from

paying Plaintiff Arthur maintenance and cure until sometime during or after 2001.  This

evidence further supports Plaintiff Arthur s assertion that his maintenance and cure

claims are not barred by a statute of limitations.

> **2.     Plaintiff s Negligence And Unseaworthiness Claims Are Viable
> As Long As The Court Has Applied Or Will Apply The Relation
> Back Doctrine Of Federal Rule 15(c).**

With regard to Defendant s arguments as to the viability of Plaintiff s negligence

and unseaworthiness claims, the Court has already heard many of the same arguments

that are likely to be presented by both sides in this Motion briefing.   At the time of

Plaintiff s April, 2003 Motion For Leave To Amend His Complaint, Plaintiff raised the

issue of whether the Court would permit the allegations of the proposed Amended

Complaint to  relate back  pursuant to Rule 15(c) to May, 2002 when the Original

Complaint was filed against the Defendants Maersk and Dyn Marine.  In opposing

---

[4]  Plaintiff expects that Defendant United States will argue that the statute of
limitations begins running at the time of injury, but such an argument would border on
absurd.  As long as Maersk was correctly and properly making maintenance and cure
payments to the Plaintiff, then Plaintiff would have no cause of action against either
Maersk or the United States for failure to pay maintenance and cure.  Plaintiff Arthur s
2001 W-2 tax form (**Exhibit   5**  ) establishes that maintenance and cure payments were
made to him during the year 2001.  Thus, Maersk would need to establish that it ceased
making maintenance and cure payments at some time during 2001 such that a statute
of limitations on a maintenance and cure claim would begin to run.

Plaintiff s Motion For Leave To Amend, Defendants Maersk and Dyn Marine contended that the relation back doctrine should not apply, and if it did not apply, then Plaintiff s amendment of the complaint would be futile, at least as to Plaintiff s negligence and unseaworthiness claims.

Plaintiff was encouraged by the Court s May 6, 2003 ruling which granted of Plaintiff s Motion For Leave To Amend. Since the relation back issue was argued by both sides, and the Defendants futility argument relied on whether relation back would be permitted, the Court s ruling in favor of the Plaintiff on the leave to amend issue was viewed by the Plaintiff as an express or implicit ruling by the Court that relation back of the Plaintiff s claims would apply.

If the Court s ruling in favor of the Plaintiff on the Motion for Leave To Amend did intend to resolve the relation back issue in favor of the Plaintiff, then most if not all of Defendant s arguments would be mooted because the Defendant concedes that Plaintiff s claims at least those related to the December 2000 injury aboard the USNS Assertive are timely if the Plaintiff s First Amended Complaint is permitted to relate back to the time the Original Complaint was filed in May of 2002.

If the Court did not intend to resolve the relation back issue at the time of the Court s ruling on Plaintiff s Motion For Leave To Amend The Complaint, then the relation back issue lies at the heart of Defendant s motion to dismiss arguments. The injuries Plaintiff claims from his December 2000 injury do properly state a claim upon which relief may be granted. If the Court finds that the filing of the First Amended Complaint relates back to the date of the filing of the original complaint on May 16, 2002, then Plaintiff has properly alleged causes of action for negligence and

unseaworthiness related to the December 2000 injury.  Defendant United States relies

solely on its argument that Plaintiff s December 2000 injury is time-barred because the

First Amended Complaint should not relate back.  Thus, if this Court finds that the First

Amended Complaint does relate back as discussed below, then Defendant s Motion To

Dismiss based on statute of limitations as to the December, 2000 injury should be

denied.

In the interests of brevity and space, Plaintiff requests that for a full and complete

statement of Plaintiff s arguments in support of the application of the  relation back

doctrine to Plaintiff s First Amended Complaint, the Court should refer to Plaintiff s April

14, 2003 Memorandum of Law In Support of His Motion For Leave To Amend His

Complaint, which is attached for the Court s convenience as **Exhibit  6"** hereto.

Plaintiff incorporates that Memorandum by reference here rather than restating all of

the arguments already contained in that Memorandum.  Instead, Plaintiff will try to

summarize those previous arguments as briefly as possible while addressing a couple

of new wrinkles in the argument that Defendant United States has introduced for the

first time here.

Federal Rule of Civil Procedure 15(c) provides as follows:

(c) Relation Back of Amendments.  An amendment of a pleading relates
back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of
limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of
the conduct, transaction, or occurrence set forth or attempted to be set
forth in the original pleading or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party may be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The Third Circuit interprets Rule 15(c) as containing three prongs, all of which must be satisfied in order for a claim to relate back to the date of the filing of the original complaint.  See Singletary v. Pennsylvania Department of Corrections, 266 F.3d 186 (3d Cir. 2001); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 457 (3d Cir. 1996).  The Third Circuit in Singletary described the requirements as follows:

[First, t]he claim against the newly-named defendants must have arisen out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . .   The second condition is that the newly named party must have  received such notice of the institution of the action [within the 120 day period] that the party will not be prejudiced in maintaining a defense on the merits.   Urrutia states that this condition has  two requirements, notice and the absence of prejudice, each of which must be satisfied.   91 F.3d at 458.  The third condition is that the newly named party must have known or should have known (again, within the 120 day period) that  but for a mistake  made by the plaintiff concerning the newly named party s identity,  the action would have been brought against  the newly named party in the first place.

266 F.3d at 194, quoting Fed. R. Civ. P. 15(c)(3).  As discussed in more depth in his previous Motion For Leave To Amend and supporting brief, Plaintiff Arthur meets all of these requirements in this case.

In Defendant s Motion To Dismiss, the only prong of the three-part test of Rule 15(c) that Defendant alleges Plaintiff does not meet is the fact that the party to be brought in must have known or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against the United

11

States.  See Defendant s Memorandum, p. 7.  Thus, Defendant does <u>not</u> dispute that:
(1) relation back is permitted by the law that provides the statute of limitations
applicable to the action; (2) the claim asserted in the First Amended Complaint arises
from the same conduct, transaction or occurrence set forth in the original pleading; and
(3) that Defendant United States received notice of the institution of the action within
the time provided for service by Rule 4 (m) and will not be prejudiced in maintaining a
defense on the merits.  Therefore, Plaintiff now addresses only the contention regarding
knowledge.[5]

> **3.    The United States Knew All Throughout This Litigation That It Was The Proper Defendant Who Should Have Been Sued Instead Of Its Contractors.**

The Third Circuit has held that  plaintiff s lack of knowledge of a particular
defendant s identity can be a mistake under Rule 15(c)(3)(B).  <u>Singletary</u>, 266 F. 3d at
201, <u>relying</u> <u>on</u> <u>Varlack v. SWC Caribbean Inc.</u>, 550 F.2d 171 (3d Cir. 1977) and
Internal Operating Procedures of the United States Court of Appeals for the Third
Circuit 9.1 (2000).   The  mistake  condition  is concerned fundamentally with the new
party s awareness that failure to join it was error rather than a deliberate strategy.
<u>Mathai</u>, 2000 U.S. Dist. LEXIS at *8[6], <u>quoting</u> <u>Advanced Power Systems, Inc. v. Hi-Tech</u>
<u>Systems, Inc.</u>, 801 F. Supp. 1450, 1457 (E.D. Pa. 1992).   To satisfy this requirement,
the plaintiff must demonstrate a mistake concerning the identity of the proper party

---

[5] The other prongs are discussed in Plaintiff s Memorandum In Support Of Motion For Leave To Amend, See, **Exhibit  6"** attached hereto.

[6]  All cases cited herein that are unpublished and found only on LEXIS will be attached hereto as **Exhibit  8"**.

existed at the time the complaint was filed.   Id. at *9, citing Nelson v. County of

Allegheny, 60 F.3d 1010, 1014 (3d Cir. 1995).

It is not necessary that the failure to name a party in an original Complaint be a

mere misnomer.  This Court, in State Farm Mutual v. Red Lion Medical Center, Inc.,

2001 U.S. Dist. LEXIS 24101 (E.D. Pa. October 17, 2001) explained the mistake prong

of Rule 15(c) by quoting from the Advanced Power Systems decision:

> The more serious issue here is the existence of a literal reading of a
> mistake concerning identity.   A literal reading of that phrase might
> suggest that only misnamed or misdescribed parties fall within the ambit
> of rule 15(c).  However,  in view of the history of the application of rule
> 15(c), **the phrase  a mistake concerning the identity of the proper
> party  should clearly not be read to limit its usefulness to cases of
> misnomer.   To do so would contravene the widely-held
> understanding that this rule allows, in certain circumstances, the
> addition of new parties that were never originally named or
> described.**  Moreover, a narrow reading of the phrase would wrongly
> divert attention from the  central element  of notice.  The  mistake
> condition does not isolate a specific form of error in identifying parties, but
> rather is concerned fundamentally with the new party s awareness that
> failure to join it was error rather than a deliberate strategy.   Where an
> amendment seeks to add a new defendant, [the mistake] aspect of 15(c)
> seems designed to insure that, prior to the expiration of the limitations
> period, the new defendant knew (or should have known) that his joinder
> was a distinct possibility.
>
> ....In this sense, the mistake condition, though not subsumed by the notice
> condition, is  intertwined  with it...
>
> The notice and mistake elements are particularly intertwined when, as
> here, there is a close relation between the original party and the party to
> be added.  In such a situation, failure to join the connected party is more
> immediately recognizable as error, and it is easier to establish that the
> new party should have known that, but for a mistake, she would have
> been included.  Therefore,  courts have generally held that [the mistake
> condition] is satisfied when the original party and added party have a
> close identity of interests.   For all of these reasons, courts have typically
> resisted a narrow reading of the mistake element and allowed the addition
> of responsible individual defendants when plaintiff simply made an error in

legal judgment or form in suing only the corporation.

State Farm Mutual, 2001 U.S. Dist. LEXIS at *5, quoting Advanced Power Systems,

801 F. Supp. at 1457 (citations omitted) (emphasis added).

Moreover, as contended when Plaintiff requested leave to amend his Complaint,

the United States and its agents are experienced with facts of this case and are well

familiar with other instances where plaintiffs, under the belief that their employer is

liable to them, sue the contractors directly only later to discover that the ships were in

fact owned by the United States such that the Public Vessels Act is invoked.  This was

evident from the deposition testimony of Patricia Pederson, the Human Resources

Director for Dyn Marine, Defendant United States  contractor for some of the claims

here:

> Q:    Just in the questions that Mr. King asked, you testified that in other
> lawsuits it was your understanding that the United States was the
> proper party; is that correct?
>
> A:    Yes.
>
> Q:    What is that understanding based on?
>
> A:    Based on how the lawsuits came about.  I mean, they would start
> off having Dyn Marine or DynCorp or Dyn Technical Services,
> Incorporated into the lawsuit and then there would be summary -- I
> think it s called summary judgments, that take out DynCorp and
> Dyn Marine and Dyn Technical Services.  They re actually taken
> out and the federal government is the actual defendant.
>
> Q:    And this is based on your experience in assisting the company in
> defending these other lawsuits?
>
> A:    Correct.

Pederson Dep., p. 53-54.  **(**See **Exhibit   7"** attached hereto**)**.

It is likewise clear from the contract between the Defendant United States and its

14

agent Maersk that the United States was aware that its agent could potentially be
named as a Defendant in this sort of litigation and that the United States wanted to
direct the litigation from the outset because it knew that, but for a mistake, it would have
been named as a party to the Complaint.  Specifically, the last portion of section (e) in
Appendix C of the Maersk-United States contract (relevant portion attached hereto as
**Exhibit  9"**) provides in part:

> DOJ reserves the right to and may directly handle any motion practice
> involving such issues [litigation advantages available to the Government].
> Also, whether appearing during a first screening of a complaint or by later
> developments, DOJ will determine whether it will handle directly, or will
> allow P&I counsel to handle dismissal of actions against any defendant
> other than the United States;  relation back  amendments to pleadings to
> substitute the United States out of time; dismissal of actions for punitive
> damages or penalties; dismissal of actions challenging discretionary
> functions of the Government; and jury demands. . . .

Accordingly, the United States cannot claim prejudice in any way in defending this case.

       Moreover, now that contractor Maersk s attorneys apparently represent the
United States in this action as well (See Defendant United States  Motion To Dismiss,
signed by Mindee Reuben, Esq., prior counsel for Maersk), it is particularly clear both
that the United States has been involved in this case from the outset and that the
defense of the United States has not been prejudiced because its  shared attorneys
are privy to all of the proceedings which have taken place in this case.

       More specifically, some of the particular arguments made by the Defendant
United States are also faulty.  For example, Defendant United States mistakenly puts
great weight on the fact that the vessels upon which Plaintiff Arthur worked were
designated with the prefix  USNS.   While Defendant points to a portion of the Code of

Federal Regulations which requires United States ships to be designated  USNS,  it does not quote a regulation requiring that ships not owned by the United States not be so designated.  Plaintiff is aware of at least one case where the designation  USNS referred to a ship that was <u>not</u> owned and operated by the United States.  <u>See</u>, <u>Myers v. The Bank of New York</u>, 1995 U.S. Dist. LEXIS 3789 (E.D. Pa. 1995) (USNS Caribbean owned by defendant The Bank of New York as trustee for the benefit of Ford Motor Company and other unspecified companies and operated by defendant International Marine Carriers).

This Court should also reject the specific argument made the Defendant United States on Page 6 of its Motion to Dismiss Memorandum which states that the two-year time bar of the SAA is unlike a time bar period prescribed under an ordinary statute of limitations because the SAA involves a waiver a sovereign immunity and thus it acts an as iron-clad bar against suit beyond the two-year statute of limitations.  Defendant s argument is an outdated understanding of the law (the cases cited are from 1949-1976) which has been altered by the Supreme Court s 1990 decision in <u>Irwin v. Department of Veteran s Affairs</u>, 498 U.S. 89 (1990).

In <u>Irwin</u>, the Supreme Court decided to address the problem of inconsistent rulings on the issue of whether equitable tolling considerations could be raised in a suit against the United States involving a statute of limitations:   We think this case affords us an opportunity to adopt a more general rule to govern the applicability of equitable tolling in suits against the Government.  <u>Irwin</u>, 498 U.S. at 95.  The Supreme Court concluded that the same considerations of equitable tolling applicable to suits against private Defendants should also apply to suits against the United States.  Id., at 95-96.

16

Accordingly, there is nothing magical about the fact either that the United States is the Defendant against Plaintiff seeks to relate back his Complaint, or that the SAA is a waiver of sovereign immunity.

This point is further established by the fact that Federal Rule of Civil Procedure 15 expressly contemplates application of the relation back doctrine of Rule 15(c) against the United States by specifically stating within that rule alternate means by which the United States can be put on notice as contemplated by Rule 15(c). Accordingly, there is nothing in the case law or within Rule 15 itself that should give the Court pause in applying the relation back doctrine in the case at bar.

### D. Plaintiff s Complaint Should Not Be Dismissed For Improper Venue.

Plaintiff s First Amended Complaint should not be dismissed for improper venue for several reasons. First, Defendant United States has not met its burden of establishing improper venue. Defendant United States, as the moving party here, has the burden of establishing that the action has been filed in an improper venue. Myers v. American Dental Ass n, 695 F.2d 716 (3d Cir. 1982), cert. denied, 462 U.S. 1106 (1983)(moving party has burden of establishing defense of improper venue). The Defendant has failed in several respects to meet this burden.

A close review of the evidence presented by the Defendant United States in support of its venue argument is inconsistent at best, and non-existent at worst. The sole piece of evidence supporting its venue arguments, the April 28, 2003 Affidavit of Cathy O Connell is defective and invalid on its face for several reasons. It is neither an affidavit or a Declaration pursuant to 28 U.S.C. § 1746 (it is actually a hybrid of both

17

and ineffective in form), and more importantly it is not competent evidence pursuant to Federal Rule 56(e) because Ms. O Connell is a <u>claims administrator for Maersk</u> who does not even claim (and could not credibly claim) to have personal knowledge of the whereabouts of ships which the Defendants throughout this case have painstakingly contended are owned by the United States Navy.  <u>See</u>, O Connell Affidavit at ¶¶ 1-7. O Connell could not possibly have personal knowledge of these facts and if she does, she fails to explain in the Affidavit how she has the personal knowledge.

This affidavit also lacks information sufficient to support Defendant s arguments. After contending throughout its entire Motion to Dismiss that Plaintiff s claims do not  relate back  to the time of filing of the Original Complaint (May 16, 2002), the United States, provides locations for these ships for the date of filing to be May 16, 2002.[7] Defendant provides no information as to the location of the ships on May 13, 2003 when Plaintiff filed the First Amended Complaint adding the United States.  The O Connell Affidavit also fails to make any reference to the USNS Littlehales which is also referred to in Plaintiff s First Amended Complaint at ¶ 17 (and which was also referred to in Plaintiff s Original Complaint).  If the USNS Littlehales was in Pennsylvania on May 16, 2002, then venue would be proper in Pennsylvania.

---

[7]  If nothing else, this is an implicit admission that Plaintiff s claims against the United States should relate back to the Original Complaint filed on May 16, 2002. Certainly, if the Court finds that Plaintiff s allegations relate back, then Defendant United States  venue arguments on this point would be more valid.

Defendant has the burden of proving otherwise.[8]

Defendant s argument that venue is improper in Pennsylvania because  Maersk Line Limited  does not have offices here is also disingenuous.  The O Connell Affidavit, on which this assertion relies is deceiving in two ways.  First, it does not assert whether Maersk has or had offices in Pennsylvania back in May, 2002 back when this case was filed.  Thus, O Connell s statements as to the present are meaningless.  Moreover the Affidavit is very misleading because it asserts that  Maersk Line Limited  does not have an office in Pennsylvania.  The named Defendant in this case is Maersk, Inc (d/b/a as Maersk Line Limited), which as Plaintiff has asserted in his First Amended Complaint at ¶ 3: (1) has a principal place of business in Madison, New Jersey; (2) has an agent for service in Philadelphia, Pennsylvania; and (3) which has at least one office in Philadelphia, Pennsylvania.  Thus, O Connell s affidavit is irrelevant on this point because it refers to the wrong party.  Plaintiff also notes that Defendant Maersk (as opposed to Defendant United States) never challenged venue in this Court during the time it was a Defendant in this case and thus this further belies O Connell s attempt to claim now that Maersk has no ties to Pennsylvania.

Second,  [t]he provision of the Public Vessels Act relating to the district in which suit shall be instituted is simply a matter of venue, not jurisdiction.   Sbarbaro v. United States, 86 F. Supp. 477, 479 (E.D. Pa. 1949), citing Hoiness v. United States, 335 U.S.

---

[8]  This Court also has the option to defer ruling on this venue challenge pending further factual development in this case.  See, Tenpenny v. United States, 285 F.2d 213 (6th Cir. 1960).

19

297 (1948).  Therefore, even if this Court were to somehow find that venue was improper (despite Defendant s lack of competent proof to support this conclusion), then the proper remedy would be to transfer the case to another United States District Court, not to dismiss the case.  See, Sbarbaro, 86 F. Supp. at 478.

Moreover, again if the Court were to somehow conclude that venue is improper, the Court enjoys the discretion, in lieu of a dismissal, to transfer the matter to a forum where venue is proper.  See, e.g. Audi AG v. Izumi, 204 F.Supp. 2d 1014, 1017 (E.D. Mich. 2002); and Indymac Mortgage Holdings, Inc. v. Reyad, 167 F.Supp. 2d 222, 237 (D. Conn. 2001).  Exercise of such discretion and transfer by the Court rather than dismissal would be particularly appropriate here where: (1) dismissal and forcing the Plaintiff to re-file elsewhere could raise statute of limitations issue and potential problems; (2) Plaintiff s choice of venue was proper and unchallenged back in May, 2002 when the Original Complaint was filed; and (3) Plaintiff s filing of the Amended Complaint in May of 2003 was with leave of Court, such that filing of the Amended Complaint in this venue was the only option for Plaintiff.

## III.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that Defendant s Motion To Dismiss be denied in all respects.

            _____
            Brian P. McCafferty
            Provost & Umphrey Law Firm, LLP
            1617 JFK Boulevard, Suite 640
            Philadelphia, Pennsylvania 19103

(215) 569-8840
(215) 569-9070 (fax)

ATTORNEY FOR PLAINTIFF

Dated: July 29, 2003

**<u>CERTIFICATE OF SERVICE</u>**

I,I, Brian P. McCafferty, Esq., hereby I, Brian P. McCafferty, Esq., hereby certI, Brian P. McC

Memorandum Of Law In Opposition to Defendant s Motion ToMemorandum Of Law In Opposition to D

the following counsel by first class mail on July 29, 2003:

>   Mindee Reuben, Esquire
>   Fox Rothschild O Brien & Frankel, LLP
>   2000 Market Street, 10th Floor
>   Philadelphia, PA 19103

_____

Brian P. McCafferty