IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD ARTHUR                 :        CIVIL ACTION
                              :
          v.                  :
                              :
UNITED STATES OF AMERICA      :        NO. 02-2931

MEMORANDUM

Bartle, J.                                September   , 2003

          Before the court is the motion of plaintiff Edward

Arthur ("Arthur") for reconsideration of this court's Order of

August 12, 2003 in which we dismissed in part his complaint

against the defendant, United States of America.  The latter has

also moved for reconsideration to the extent that our Order

denied its motion to dismiss for improper venue.

I.

          Arthur, a merchant seaman, filed his original complaint

pursuant to the Jones Act, 46 U.S.C. § 688, and the Suits in

Admiralty Act, 46 U.S.C. § 741 et seq., against his employers

Maersk, Inc. ("Maersk") and Dyn Corporation Technical Services

("Dyn") for four separate injuries he allegedly suffered while

working aboard the United States Naval Ship (U.S.N.S.) Stalwart

on May 17, 1999, the U.S.N.S. Capable in October, 1999, the

U.S.N.S. Littlehales on May 2, 2000, and the U.S.N.S. Assertive

in December, 2000.  Plaintiff has asserted claims of negligence,

unseaworthiness, and failure to pay maintenance and cure in

connection with these four incidents.

We granted the motions of Maersk and Dyn for summary judgment on May 16, 2003 on the ground that only the United States could be sued for plaintiff's alleged injuries.  On April 14, 2003, while the summary judgment motions were pending, plaintiff filed a motion to amend his complaint to add the United States as a party.  On May 6, 2003 we allowed the plaintiff's motion to amend, and plaintiff filed his amended complaint on May 13, 2003, three days before summary judgment was granted in favor of the two original defendants.

Thereafter, the United States, now a defendant, moved to dismiss the amended complaint on the ground that the two-year statute of limitations under the Suits in Admiralty Act, 46 U.S.C. § 745, barred the action as to all four injuries.  It provides, "suits as ... authorized [by this chapter] may be brought only within two years after the cause of action arises." Id.  The statute of limitations for claims of this kind begins to run from the date of the injury.  McMahon v. United States, 342 U.S. 25, 27 (1951); Bivell v. United States, 735 F.2d 755, 757 (3d Cir. 1984).

In our August 12, 2003 Memorandum and Order, we decided that the two-year limitation period was jurisdictional. Accordingly, we held that the relation back provision of Rule 15(c) of the Federal Rules of Civil Procedure was of no help to plaintiff and that all of his claims for negligence and unseaworthiness and some of his claims for maintenance and cure

-2-

were barred.  We also denied the Government's motion to dismiss
for improper venue.

                                    II.

        Arthur now urges reconsideration of our dismissal with
respect to his injury on the U.S.N.S. Assertive in December,
2000.  He relies on the Supreme Court's decision in Irwin v.
Dep't of Veterans Affairs, 498 U.S. 89 (1990).  The plaintiff in
that case alleged that the Department of Veterans Affairs had
illegally fired him because of his race and physical disability
in violation of Title VII of the Civil Rights Act of 1964, 42
U.S.C. § 2000e, et seq.  The District Court dismissed the case on
the ground that the plaintiff had missed a filing deadline under
the statute, and the Court of Appeals affirmed.  Both courts
concluded that the deadline was jurisdictional since the
Government's waiver of sovereign immunity must be strictly
construed.  While upholding the dismissal, the Supreme Court
rejected the notion that the limitation period was jurisdictional
and in doing so ventured far beyond the particulars of Title VII,
the statute in issue.  The Court announced that "this case
affords us an opportunity to adopt a more general rule to govern
the applicability of equitable tolling in suits against the
Government."  Id. at 95.  It reasoned that limitations periods
enacted by Congress, at least in statutes in which private
parties as well as the Government can be sued, are presumptively
subject to equitable tolling.  The Court explained:

              Once Congress has made such a waiver [of
              sovereign immunity], we think that making the

                                  -3-

> rule of equitable tolling applicable to suits
> against the Government, in the same way that
> it is applicable to private suits, amounts to
> little, if any, broadening of the
> congressional waiver.  Such a principle is
> likely to be a realistic assessment of
> legislative intent as well as a practically
> useful principle of interpretation.  We
> therefore hold that the same rebuttable
> presumption of equitable tolling applicable
> to suits against private defendants should
> also apply to suits against the United
> States.  Congress, of course, may provide
> otherwise if it wishes to do so.

Id. at 95-96.

That being said, the Court was then quick to caution, "Federal courts have typically extended equitable relief only sparingly."  Irwin, 498 U.S. at 96.  It added, "[b]ecause the time limits imposed by Congress in a suit against the Government involve a waiver of sovereign immunity, it is evident that no more favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants." Id.

Upon reconsideration, we agree with Arthur that under the broad language of Irwin the two-year bar of the Suits in Admiralty Act can no longer be considered to be jurisdictional as it had previously been interpreted.  Cf. Bovell v. U.S. Dep't of Def., 735 F.2d 755, 756-57 (3d Cir. 1984).  Title VII, which was the statute in Irwin, stated that "[w]ithin thirty days of receipt of notice of final action taken by ... the Equal Employment Opportunity Commission ... an employee ... may file a civil action ...."  The Supreme Court made it clear that equitable tolling applied not only with respect to this statute

-4-

but also to a statute, arguably more restrictive, which provides, "[E]very claim ... shall be barred unless the petition ... is filed ... within six years ...." <u>Id.</u> at 95.  Our Court of Appeals recently reached the conclusion, based on <u>Irwin</u>, that the limitations period of the Federal Tort Claims Act, 28 U.S.C. § 2401(b), is not jurisdictional.  <u>Hughes v. United States</u>, 263 F.3d 272, 278 (3d Cir. 2001).  Under that Act, "a tort claim against the United States shall be forever barred unless it is presented in writing ... within two years after such claim accrues or unless action is begun within six months after the date of mailing ... of notice of final denial of the claim by the agency to which it was presented."  In a similar vein, the Suits in Admiralty Act states that "[s]uits as herein authorized may be brought only within two years after the cause of action arises ...."  46 U.S.C. § 745.  For jurisdictional purposes, we see no reason to distinguish the latter from the limitation periods in Title VII or the Federal Tort Claims Act.

Because the time bar in the Suits in Admiralty Act can no longer be deemed to be jurisdictional, plaintiff contends that certain of his claims against the United States remain viable as a result of the relation back provision of Rule 15(c) of the Federal Rules of Civil Procedure.  That rule, which by its terms is applicable to the Government, provides in relevant part:

> (c) **Relation Back of Amendments**.  An amendment of a pleading relates back to the date of the original pleading when ...
>
> > (2)  the claim or defense asserted in the amended pleading arose out of the conduct,

transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3)  the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Rule 15(c), of course, is intended to ameliorate the harsh result of strict application of the statute of limitations by "prevent[ing] parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense."  Fed. R. Civ. P. 15, Advisory Committee Note to 1991 Amendment.

It is undisputed that plaintiff's amended complaint clearly meets the requirements of Rule 15(c)(2) and Rule 15(c)(3)(A).  The claims against the United States "arose out of the conduct, transaction, or occurrence set forth ... in the original pleading."  Furthermore, the United States does not assert that it failed to receive notice of the institution of the action within the period authorized for service of the complaint by Rule 4(m) of the Federal Rules of Civil Procedure.[1]  Nor does it contend that it will be prejudiced in maintaining a defense on the merits.  Arthur, however, must also satisfy Rule 15(c)(3)(B).

---

1.  A party has 120 days under Rule 4(m) in which to serve a complaint after it is filed.  Fed. R. Civ. P. 4(m).

This provision requires that the party to be brought in by amendment "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."

The Third Circuit has interpreted "mistake" in Rule 15(c)(3)(B) broadly.  For example, in <u>Varlack v. SWC Caribbean, Inc.</u>, 550 F.2d 171 (3d Cir. 1977), the court allowed relation back when the description in the complaint, an "Unknown Employee of Orange Julius Restaurant," was later replaced with the name of an actual employee.  The court ruled that the original pleading had contained a "mistake concerning the identity of a party" under Rule 15(c)(3)(B).  <u>Id.</u> at 175.  In <u>Advanced Power Systems, Inc. v. Hi-Tech Systems</u>, 801 F. Supp. 1450 (E.D. Pa. 1992), this court determined that a mistake included not only misnomers and errors in nomenclature but "new parties that were never originally named or described."  <u>Id.</u> at 1457.  There, the court allowed a real party to be substituted for a "John Doe" defendant.  <u>Id.</u>  It also concluded that a mistake can be one of legal judgment as well as one of fact.  <u>See</u> <u>Talifero v. Costello</u>, 467 F. Supp. 33, 36 (E.D. Pa. 1979).  The Third Circuit, in dicta in <u>Singletary v. Pennsylvania Department of Corrections</u>, 266 F.3d 186, 201 n.4 & 5 (3d Cir. 2001) cited with approval <u>Advanced Power's</u> allowance of relation back of an amended "John Doe" complaint.  It recognized that in some situations, such as civil rights actions against individual police officers, it may be difficult to ascertain the actual identity of certain defendants

before the action is begun.  Id.  The court, citing Varlack, made
it clear that not knowing the identity of a party is a mistake
concerning the party's identity under Rule 15(c)(3)(B).
Singletary, supra, at 200-01.

At least one case in this court has distinguished
Advanced Power on the ground that mistake under Rule 15(c)(3)(B)
can occur only when there is a relationship or close identity of
interest between the originally named defendants and those to be
added.  In Mailey v. SEPTA, 204 F.R.D. 273 (E.D. Pa. 2001), the
plaintiff had suffered personal injuries while using a
footbridge.  Various defendants were sued within the limitations
period.  At a court status conference after the statute had run,
plaintiff learned for the first time of two construction
companies that had been working in the area of the bridge at the
time of the accident.  Plaintiff sought to join them under
relation back.  The court denied the motion on the ground that
the failure to join was due to lack of knowledge that the two
construction companies were potentially liable.  According to
Mailey, failure to investigate a claim thoroughly is not what
Rule 15(c)(3)(B) deems to be a mistake.

Here, of course, we are not dealing with a "John Doe"
complaint where it is difficult to identify ahead of time the
names of the proper defendants.  Nor is there an employer-
employee relationship between a named and unnamed party.  Nor is
this a case involving affiliated companies where there is a mix-
up due to similar names or to a complicated corporate family

-8-

tree.  Finally, no error occurred because the wrong government
agency or officer was identified.[2]  Instead, Arthur originally
sued Maersk, his employer, rather than the United States, with
which Maersk had a contractual relationship.

Keeping in mind the Third Circuit's generous reading of
Rule 15(c)(3)(B), we will assume that plaintiff's failure to sue
the United States at the outset was an excusable factual or legal
mistake and that all the requirements under Rule 15(c) have been
met.  However, this does not end our inquiry.  The United States
argues that plaintiff had been so dilatory in moving to amend
that it may not have the benefit of relation back.  When we were
considering whether to allow the amendment, the United States was
not then a party and thus not in a position to make its
objections known.

Rule 15(a), among other provisions, permits amendments
to pleadings with the approval of the court.  The rule reads in
relevant part that, "leave shall be freely given when justice so
requires."  The Supreme Court in <u>Foman v. Davis</u>, 371 U.S. 178
(1962), held that a court has discretion in deciding whether or
not to allow an amendment and identified a nonexclusive list of

---

2.  Rule 15(c) provides in relevant part:

    The delivery or mailing of process to the United States
    Attorney, or United States Attorney's designee, or the
    Attorney General of the United States, or an agency or
    officer who would have been a proper defendant if
    named, satisfies the requirement of subparagraphs (A)
    and (B) of this paragraph ... with respect to the
    United States or any agency or officer thereof to be
    brought into the action as a defendant.

acceptable reasons for the denial of an amendment:  (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; and (5) futility of amendment.  Id. at 182.

Plaintiff, an experienced merchant seaman, knew or should have known that the U.S.N.S. Assertive was a government vessel when he was injured in December, 2000 and thus when he filed suit on May 16, 2002.  The U.S.N.S. designation refers to United States Naval Ship and connotes "[c]ivilian manned ships, of the Military Sealift Command or other commands, designated 'active status, in service' ...."  32 C.F.R. § 700.406(c).  On October 15, 2002 the court held a status conference in chambers which counsel for the plaintiff and counsel for then defendants Maersk and Dyn attended.  Each attorney forwarded to the court and to each other a Case Status Report in advance of the conference on a designated form.  Question No. 11 on the form stated, "Do you have any special comment to make or special issues or problem to raise concerning the case?"  Counsel for Maersk responded "Case arises under Public Vessels Act."  At the status conference, as counsel for plaintiff concedes, counsel for Maersk and Dyn clearly made known their views that the United States, and not their clients, was the proper defendant.[3]  By

---

3.  The Public Vessels Act, 46 U.S.C. § 781 provides:

   A libel in personam in admiralty may be brought against
   the United States, or a petition impleading the United
                                             (continued...)

this time at the very latest, plaintiff's counsel clearly had in hand the necessary facts and sufficient coaching in the law so as to alert him to the responsibility of the United States for plaintiff's injuries.  At this point it was also at least a month and a half before the statute of limitations was to expire.

On January 22, 2003 and January 31, 2003 Dyn and Maersk respectively filed and served motions for summary judgment and supporting briefs.  Not surprisingly, each contended that plaintiff's exclusive remedy was against the United States. Still plaintiff did not take immediate action.  It was not until April 14, 2003 that plaintiff finally filed his motion to amend the complaint to add the United States as a defendant.  This was over two years and three months after he was injured on what he knew or should have known was a government vessel, eleven months after the original complaint had been filed, six months after plaintiff's counsel was alerted by opposing counsel that the United States was the proper party, over three months after the statute of limitations had expired for plaintiff's negligence and

---

3. (...continued)
     States, for damages caused by a public vessel of the
     United States, and for compensation for towage and
     salvage services, including contract salvage, rendered
     to a public vessel of the United States ....

The two-year statute of limitations in the Suits in Admiralty Act, 46 U.S.C. § 745, applies to claims under the Public Vessels Act 46 U.S.C. § 782.  Moreover, a lawsuit against the Government is the plaintiff's exclusive remedy.  46 U.S.C. § 745.

unseaworthiness claims, and almost three months after Maersk and Dyn moved for summary judgment.[4]

     We recognize the salutary purpose of relation back as incorporated in Rule 15(c).  Nonetheless, what our Court of Appeals has said in Nelson v. County of Allegheny, 60 F.3d 1010, 1015 n.8 (3d Cir. 1995) about Rule 17(a) concerning substitution of real parties in interest seems equally applicable here.  These rules are "intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made."  Id.  Neither circumstance exists in this case.  In any event, assuming that plaintiff initially made a mistake as defined under Rule 15(c)(3)(B), he surely must act with reasonable dispatch once the mistake is exposed.  As the Supreme Court emphasized in Irwin in another context, equitable relief allowing a party to act outside a statutory time period should be granted "sparingly."  Irwin, 498 U.S. at 96.

     Considering the facts outlined above, we conclude that plaintiff was unduly dilatory in bringing his negligence and unseaworthiness claims against the United States for his December, 2000 injury.  See Foman, 371 U.S. at 182.  Any mistake about the United States was clearly no longer a mistake as of the

_____

4.  Plaintiff has complained that Maersk and Dyn were dilatory in producing the contracts they had with the Government.  Even if so, Maersk and Dyn put plaintiff on notice at an earlier stage that the United States was the proper defendant.  Before having the documentation in hand, plaintiff could have sought to add the United States as a party without at that point agreeing to the dismissal of Maersk and Dyn.  Plaintiff may not wait until he has absolute certainty before moving to amend.

October 15, 2002 status conference, which as noted previously
occurred at least a month and a half before the claim was time
barred.  Plaintiff should have moved to amend before that
deadline.  Rule 15(c) was never designed to allow parties to
sleep on their rights.  What plaintiff is seeking to do here is
"to perform an end-run around the statute of limitations that
bars [his negligence and unseaworthiness] claims."  <u>Nelson</u>, 60
F.3d at 1015.

      Accordingly, because Arthur's motion to amend came too
late, we will grant the motion of the United States to dismiss
his negligence and unseaworthy claims as barred by the two-year
statute of limitations of the Suits in Admiralty Act, 46 U.S.C.
§ 745.

III.

      Arthur also has brought claims for maintenance and cure
for his four injuries.  Under general maritime law, a member of a
ship's crew who is injured while serving aboard the vessel is
entitled to recover what is known as maintenance and cure.
"Maintenance is the living allowance for a seaman while he is
ashore recovering from injury or illness.  Cure is payment of
medical expenses incurred in treating the seaman's injury or
illness."  <u>O'Connell v. Interocean Mgmt. Corp.</u>, 90 F.3d 82, 84
(3d Cir. 1996) (citations omitted).  This obligation exists
"until the seaman has reached the point of maximum cure, that is
until the seaman is cured or his condition is diagnosed as
permanent and incurable."  <u>Id.</u> (citation omitted).  This duty "is

-13-

a continuous one." <u>Loverich v. Warner Co.</u>, 118 F.2d 690, 693 (3d Cir. 1941).

As with claims of negligence and unseaworthiness, the two-year statute of limitations of the Suits in Admiralty Act applies to an action for failure to pay maintenance and cure.  46 U.S.C. § 745; <u>McMahon</u>, 342 U.S. at 26.  "[A] continuous failure to provide maintenance and cure must be regarded as giving rise to successive breaches of contract with successive [two]-year periods of limitation commencing anew from day to day." <u>Loverich v. Warner Co.</u>, 36 F. Supp. 943, 947 (E.D. Pa. 1940).  As Judge Frederick V. Follmer of this court wrote many years ago, a seaman is "entirely within his rights in asserting his claim for maintenance and cure for the two year period immediately antedating the filing of the [claim]." <u>Kruhmin v. United States</u>, 81 F. Supp. 689, 690 (E.D. Pa.), <u>aff'd</u>, 177 F.2d 906 (3d Cir. 1949).  Even if a seaman files an otherwise valid claim for maintenance and cure more than two years after any injury, he "is entitled to recover for the value of whatever maintenance and cure the shipowner had the continuing duty to supply during the two-year period prior to the date of filing the [claim]." <u>MacInnes v. United States</u>, 189 F.2d 733, 736 (1st Cir. 1951)(citations omitted); <u>see</u> <u>Rashidi v. Am. President Lines, Ltd.</u>, Civ. A. No. 94-1029, 1994 WL 321031, at *4 (E.D. La. June 2, 1994); <u>Danstrup v. The Richmond P. Hobson</u>, 112 F. Supp. 851 (E.D.N.Y. 1953).  <u>But</u> <u>see</u> <u>Bullen v. United States</u>, No. C93-

757Z, 1993 WL 742685 (W.D. Wash. Nov. 3, 1993), aff'd, No. 93-36123, 1994 WL 192102 (9th Cir. May 16, 1994).

As explained above, a seaman is entitled to maintenance and cure until he has reached maximum cure or his condition is diagnosed as permanent and incurable. In his amended complaint, Arthur maintains that his knee was surgically repaired after his May 17, 1999 injury and that he was medically cleared to return to work in September, 1999. Likewise, he alleges that a physician performed knee surgery after his October, 1999 injury and cleared him to return to work in February, 2000. Therefore, he reached maximum cure more than two years prior even to the time he originally filed suit on May 16, 2002, without considering the longer period that had elapsed before he filed his motion to amend the complaint on April 14, 2003 when the statute is properly tolled. See Advanced Power, 801 F. Supp. at 1455 n.2. As a result, the clock has run on any claim for maintenance and cure as to these two injuries.

Arthur also has asserted a claim for maintenance and cure for his May 2, 2000 injury. He avers that he underwent knee surgery after his May 2, 2000 accident and was authorized to return to work in September, 2000. Since maintenance and cure is a continuing obligation, such a claim would not be barred by the statute of limitations if Arthur had sued the United States when he sued Maersk and Dyn. Here again, he did not move to amend his complaint until more than two years after September, 2000 when he

reached maximum cure as to his May 2, 2000 accident.  This claim is now barred.

Finally, we must determine whether Arthur's claim for his December, 2000 injury aboard the U.S.N.S. <u>Assertive</u> is stale. His amended complaint alleges that since the time of his last injury, his "left knee has deteriorated considerably, ultimately developing into medial osteoarthritis.  Plaintiff Arthur has recently had a high tibial osteotomy surgery, and his treating physician has concluded that he will ultimately require a total knee replacement."  He further avers that he has been unable to return to work since his December, 2000 accident.  Accepting as true the well-pleaded factual allegations in the amended complaint, we read it as stating that Arthur has not yet reached maximum cure for this injury.  Thus, the statute of limitations does not prevent any claim for maintenance and cure which reaches back to April 15, 2001, two years before Arthur filed his motion to add the United States as a party.

IV.

The United States also moves for reconsideration of our denial of its motion to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure.  <u>See</u> Fed. R. Civ. P. 12(b)(3).  The venue provision of the Suits in Admiralty Act provides, in relevant part:

> Such suit shall be brought in the district
> court of the United States for the district
> in which the vessel or cargo charged with
> creating the liability is found within the
> United States, or if such vessel or cargo be
> outside the territorial waters of the United

States, then in the district court of the
United States for the district in which the
parties so suing, or any of them, reside or
have an office for the transaction of
business in the United States ....

46 U.S.C. § 782.  The United States, as the defendant, bears the

burden of establishing that venue is improper.  Myers v. Am.

Dental Ass'n, 695 F.2d 716, 724-25 (3d Cir. 1982); Simon v. Ward,

80 F. Supp. 2d 464, 467-68 (E.D. Pa. 2000).

Arthur does not reside in the Eastern District of

Pennsylvania.  Consequently, we must turn to the question of

where the vessel was found.  In order to satisfy its burden in

connection with its original motion to dismiss, the United States

attached an affidavit of Cathy O'Connell ("O'Connell"), the

Claims Administrator for Maersk.  She stated that the U.S.N.S.

Assertive, the vessel on which Arthur was injured in December

2000, was in Yokohama, Japan on May 16, 2002, the date he filed

his original complaint.

In their original briefs, Arthur and the Government

assumed that the words in the venue provision "the parties so

suing, or any of them" included the defendants.  In its motion

for reconsideration, the Government contends that the words "the

parties so suing or any of them" refer only to the plaintiff or

plaintiffs.  It relies on Hoiness v. United States, 335 U.S. 297

(1948), a case which it did not cite in its earlier papers.  The

Supreme Court concluded that the venue provisions refer to the

libelant or plaintiff only and not to the United States which is

"ubiquitous throughout the land."  Id. at 302.

-17-

The Government now supplies us for the first time with the Declaration of James Beliveau, a project officer in the Special Mission Ships Program for the Department of the Navy, Military Sealift Command.  It adds a fact not before us previously that the U.S.N.S. <u>Assertive</u> was outside the territorial waters of the United States in the vicinity of Yokohama, Japan on May 13, 2003, the day the amended complaint was filed.  If we consider this declaration, venue is not properly laid here because the vessel was not found in this district at that time, and plaintiff was and is a resident of Georgia.

Of the two dates, May 16, 2002 and May 13, 2003, we think the proper one to be considered for venue purposes is May 13, 2003.[5]  For the reasons stated previously, relation back under Rule 15(c) is not applicable, and it was not until this latter point in time that the United States became a party.

The problem with the Government's reliance on the Beliveau declaration is that it comes too late.  This information was clearly available to it when it filed its original motion to dismiss.  Motions for reconsideration are not designed to allow parties to come forth with supplemental facts clearly within their knowledge at an earlier time.  <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985).

---

5.  No one argues that the proper date for venue purposes was April 14, 2003, the date on which the motion to amend was filed.

We will not consider the Beliveau declaration. Without it, the United States has not met its burden of proof as to the location of the U.S.N.S. <u>Assertive</u> on May 13, 2003. Accordingly, it has not established that venue is improper in the Eastern District of Pennsylvania.

V.

In sum, we will grant the motions of the United States to dismiss the claims of plaintiff for negligence and unseaworthiness. We will also grant its motions to dismiss with respect to plaintiff's claims for maintenance and cure except for his claim for his December, 2000 injury for the period from April 15, 2001 forward. Finally, we will deny the Government's motion to dismiss for improper venue.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD ARTHUR                    :        CIVIL ACTION
                                 :
        v.                       :
                                 :
UNITED STATES OF AMERICA         :        NO. 02-2931

ORDER

AND NOW, this      day of September, 2003, upon
consideration of the motion of plaintiff and the motion of the
United States for reconsideration and for the reasons set forth
in the accompanying Memorandum, it is hereby ORDERED that:

(1)  this court's Order of August 12, 2003, together
with its accompanying Memorandum, are VACATED;

(2)  the motions of defendant United States to dismiss
the claims of plaintiff for negligence and unseaworthiness are
GRANTED;

(3)  the motions of defendant United States to dismiss
the claims of plaintiff for maintenance and cure as to his
May 17, 1999, October, 1999 and May 2, 2000 injuries are GRANTED;

(4)  the motions of defendant United States to dismiss
the claim of plaintiff for maintenance and cure for his December,
2000 injury for any period prior to April 15, 2001 is GRANTED but
otherwise DENIED; and

(5)  the motion of defendant United States to dismiss
for improper venue is DENIED.

BY THE COURT:

_____
                              J.