IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD ARTHUR  Plaintiff,  v.  THE UNITED STATES OF AMERICA  Defendant. | Civil Action No. 02-CV-2931 |

**PLAINTIFF EDWARD ARTHUR S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION REQUESTING THE COURT TO RECONSIDER THE SEPTEMBER 15, 2003 MEMORANDUM OPINION AND ORDER OR ALTERNATIVELY FOR CLARIFICATION OF THE COURT S SEPTEMBER 15, 2003 ORDER**

Plaintiff Edward Arthur, through his undersigned attorneys, and pursuant to Local Rule of Civil Procedure 7.1(g), submits this Memorandum Of Law In Support Of Plaintiff Arthur s Motion To Reconsider Or Alternatively Clarify The Court s September 15, 2003 Memorandum Opinion and Order[1] granting Defendant United States Motion To Dismiss in part.

I.   **PROCEDURAL HISTORY**

Plaintiff s Complaint asserts claims against Defendant United States for: (1) negligence; (2) unseaworthiness; and (3) failure to pay maintenance and cure.  In originally adjudicating Defendant United States Motion to Dismiss (Or Alternatively For

---

[1] A copy of the Court s September 15, 2003 Memorandum and Order is attached hereto as **Exhibit   1"**.

Summary Judgment), this Court dismissed entirely Plaintiff's claims for negligence and unseaworthiness, and dismissed Plaintiff's maintenance and cure related claims for the time period prior to May 14, 2001.  See, the Court's August 12, 2003 Order.  The core of the Court's ruling dismissing these claims as time-barred stemmed from the Court's conclusion that the two-year statute of limitations of the Suits in Admiralty Act, 46 U.S.C. § 741 et seq. was jurisdictional in nature, and thus at the expiration of the two-year statute of limitations the Court lost subject matter jurisdiction over Plaintiff's claims. See, the Court's August 12, 2003 Memorandum at pages 7-8.  Based on this reasoning, the Court did not decide the issue of whether Plaintiff's First Amended Complaint related back pursuant to Federal Rule of Civil Procedure 15(c).

On August 21, 2003, Plaintiff moved for Reconsideration of the Court's August 12, 2003 Memorandum and Opinion.  The crux of Plaintiff's Motion was that the Court had erred in concluding that the Court had been deprived of subject matter jurisdiction over Plaintiff's claims by the expiration of the Suits In Admiralty Act's two-year statute of limitations because that statute of limitations was "jurisdictional" in nature.  Plaintiff Arthur contended that the United States Supreme Court decision in Irwin v. Department of Veteran's Affairs, 498 U.S. 89 (1990), later decisions applying the Irwin decision had concluded that statutes of limitations waiving federal sovereign immunity were not jurisdictional in nature and could be subject to exceptions such as equitable tolling.

On September 15, 2003, after considering Plaintiff's Motion For Reconsideration, the Court vacated the prior August 12, 2003 Memorandum and Order.  The Court, however, reached substantially the same result as the August 12, 2003 Memorandum

-2-

and Order, but on different legal grounds. Initially, the Court noted agreement with the Plaintiff that pursuant to the Supreme Court's decision in <u>Irwin</u>, the statute of limitations of The Suits in Admiralty Act could no longer be considered jurisdictional. <u>See</u>, the Court's September 15, 2003 Memorandum at p. 4. As a result of this conclusion, the Court proceeded to discuss whether Plaintiff's claims against the United States which were stated in the First Amended Complaint (which the Court granted leave to the Plaintiff to file in May of 2003 and which added the United States as a party), remained viable as a result of the relation back provision of Rule 15(c) of the Federal Rule of Civil Procedure.

II.   **ARGUMENT**

Plaintiff seeks Reconsideration and/or Clarification of the Court's September 15, 2003 Memorandum and Opinion because it is difficult to discern from the body of the Memorandum and discussion the Court's definite grounds for granting Defendant United States' Motion to Dismiss in part. Specifically, Plaintiff cannot definitely be sure whether: (1) the Court concluded that Plaintiff's Complaint could not ultimately "relate back" pursuant to Federal Rule of Civil Procedure 15(c); or (2) that despite the fact that the Court had already granted Plaintiff Leave of Court on May 6, 2003 to amend his complaint to add the United States as a Defendant[2], the Court is now implicitly revoking that Leave of Court and is now deciding <u>sua</u> <u>sponte</u> and retroactively[3] that Plaintiff did

---

[2] A copy of the Court's May 6, 2003 Order is attached for the Court's convenience as **Exhibit "2"** hereto.

[3] A review of the Defendant United States' Motion to Dismiss and accompanying Memorandum establishes that the United States did not even raise <u>any</u> issue regarding Federal Rule of Civil Procedure 15(a), or ask the Court to reconsider or vacate the

-3-

not or cannot meet the Federal Rule 15(a) standard for leave to amend a complaint.

Plaintiff seeks Clarification because the Court appears to state that the Court would assume or had ruled that for purposes of the September 15, 2003 Memorandum, the Plaintiff had met all of the requirements for relation back under Rule 15(c). Indeed, if that was the Court's conclusion or ruling, then the expected result would have been a concomitant ruling that the Plaintiff's claims against the United States could relate back and the Defendant United States' Motion to Dismiss based on statute of limitations must be denied. On page 9 of the Court's September 15, 2003 Memorandum and Opinion, the Memorandum states: Keeping in mind the Third Circuit's generous reading of Rule 15(c)(3)(B), we will assume that plaintiff's failure to sue the United States at the outset was an excusable factual or legal mistake and that all the requirements under Rule 15(c) have been met. Nonetheless, ultimately the Court did not apply the relation back doctrine and instead ruled against the Plaintiff dismissing almost all of his claims against Defendant United States based upon the expiration of the statute of limitations.

Plaintiff's request for Clarification also stems from the Court's discussion of Rule 15(a) standards (See, the Court's September 15, 2003 Memorandum at page 9-13) and

---

Court's May 6, 2003 Order granting Plaintiff Leave of Court to file the First Amended Complaint. United States' legal counsel (the exact same legal counsel that have represented Defendants Maersk and Dyn Marine in this case) argues merely that the First Amended Complaint should not relate back, not that Plaintiff should not have been given Leave of Court to file it pursuant to Rule 15(a) back in May 2003. Accordingly, it is clear that any Rule 15(a) issues have been raised by the Court <u>sua sponte</u> and not because the Defendant United States made any contentions or objections that were based on or invoked Rule 15(a).

the Court's statement in the Memorandum at page 13 that: Accordingly, because Arthur's motion to amend came too late, we will grant the motion of the United States to dismiss his negligence and unseaworthy claims as barred by the two-year statute of limitations of the Suits in Admiralty Act, 46 U.S.C. § 745. This discussion is unclear for two reasons.

    First, as the Court notes at page 2 of the September 15, 2003 Memorandum, this Court had already granted Plaintiff leave to amend his complaint to add the United States back on May 6, 2003. With the Court's ruling on May 6, 2003, any issues regarding Federal Rule 15(a) had already been addressed by the Court and this Court had already ruled in Plaintiff's favor on the Rule 15(a) issue granting leave to amend the complaint. Plaintiff complied with the Court's May 6, 2003 Order and filed his First Amended Complaint within the seven (7) business days that the Court granted the Plaintiff.

    Second, there is nothing in the Court's September 15, 2003 Memorandum and Order which suggests that the Court's May 6, 2003 Order has been reversed, reconsidered, modified or vacated by the Court. Accordingly, as long as the Court's May 6, 2003 Order expressly granting Plaintiff Leave of Court to file an amended complaint is intact, then Plaintiff respectfully suggests that this Court has already concluded that Plaintiff's First Amended Complaint, as well as the reasons Plaintiff sought Leave of Court to file the Amended Complaint, was in conformity with Federal Rule of Civil Procedure 15(a) and that there is no Rule 15(a) issue that should affect the outcome of Defendant United States' Motion to Dismiss.

    The above discussion leads Plaintiff to respectfully suggest that the Court's

September 15, 2003 Memorandum and Opinion either concluded that: (1) despite the Third Circuit's generous reading of Rule 15(c)(3)(B) [4], Plaintiff's First Amended Complaint ultimately did not satisfy the requirements of Rule 15(c); or (2) although the Memorandum does not expressly state as such, the Court now intends to vacate or reverse the May 6, 2003 Order granting Plaintiff Leave of Court, and rule that Leave never should have been granted to amend the Complaint. Plaintiff respectfully submits that the Court should reconsider the September 15, 2003 Memorandum and Opinion and conclude that all of Plaintiff's claims are timely as to Plaintiff's December 2000 injury if either theory of the Court's conclusion is correct.

    **A.**    **Plaintiff's First Amended Complaint Has Met All Of The Requirements Of Rule 15(c) And Thus The Court Should Permit Relation Back Which Would Defeat Defendant United States' Motion To Dismiss For Any Claims Occurring After May 16, 2000.**

If the Court is now granting Defendant United States' Motion To Dismiss on the basis that Plaintiff Arthur did not satisfy the requirements of Federal Rule of Civil Procedure 15(c), also known as the "relation back" doctrine, then the Plaintiff respectfully requests the Court to reconsider this conclusion and ruling. Federal Rule of Civil Procedure 15(c)(3) provides as follows:

> (c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
>
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading or

---

[4] See the Court's September 15, 2003 Memorandum at p. 9.

> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party may be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Based on this Rule, Plaintiff Arthur has asserted that the Court should relate back his Amended Complaint to the date of the filing of the original Complaint (May 16, 2002). Relation back of the Amended Complaint is critical to Plaintiff's negligence claims because the two-year statute of limitations under the Public Vessels Act has passed. If relation back is denied, Plaintiff will be unfairly barred from bringing his negligence claim against the United States, and the United States and its contractors will be rewarded for withholding evidence from the Plaintiff in violation of both the Court's directive to make Initial Disclosures in a timely fashion and Rule 26(a)(1)'s requirement that a party disclose all documents and information that the disclosing party may use to support its claims or defenses.

This Court has concluded in the September 15, 2003 Memorandum that the Plaintiff's First Amended Complaint has met the requirements of Rule 15(c)(2) and Rule 15 (c)(3)(A). <u>See</u>, the Court's September 15, 2003 Memorandum at p. 6. Accordingly, if the Plaintiff has met the requirements of Rule 15 (c)(3)(B), then Plaintiff has satisfied all of the requirements of Rule 15(c) and his Complaint against the United States should be permitted to relate back to the time of the filing of the Original Complaint on May 16, 2002. The Court appears to acknowledge that the Plaintiff has met or can meet the requirements of Rule (c)(3)(B) in the September 15, 2003 Memorandum at p.

9: Keeping in mind the Third Circuit s generous reading of Rule 15 (c)(3)(B), we will assume that plaintiff s failure to sue the United States at the outset was an excusable factual or legal mistake and that all of the requirements under Rule 15(c) have been met.

Plaintiff respectfully submits that if the Court concluded that Plaintiff had met all of the requirements of Rule 15(c) and the First Amended Complaint should relate back, then the Court should not have granted Defendant United States Motion to Dismiss regarding the claims related to the December 2000 injury. Plaintiff requests that the Court reconsider and vacate the September 15, 2003 Memorandum and Order and instead enter an Order denying Defendant United States Motion to Dismiss regarding Plaintiff Arthur s December 2000 injuries.

**B.    This Court Has Already Correctly Granted Plaintiff Leave To File The First Amended Complaint Against The United States In May Of 2003 Such That There Were No Issues Regarding Rule 15(a) Before The Court And To The Extent There Were Rule 15(a) Issues The United States Already Had Ample Opportunity Through Its Agents Maersk And Dyn Marine To Raise These Issues When Plaintiff Moved For Leave To Amend.**

If the Court did conclude that Plaintiff s First Amended Complaint met all of the requirements of Rule 15(c) to relate back, then the only conclusion Plaintiff can draw from the Court s September 15, 2003 Memorandum and Opinion is that despite the fact that the Court had already granted Plaintiff Leave of Court in May of 2003 to amend his Complaint to add the United States as a Defendant, the Court is now implicitly revoking that Leave of Court and is now deciding <u>sua sponte</u> and retroactively that Plaintiff did not or cannot meet the Federal Rule 15(a) standard for leave to amend his complaint to

add the United States.

Plaintiff respectfully submits that such a ruling would be in error both because: (1) the Supreme Court, the Third Circuit and this District Court have all traditionally given a very liberal application of Rule 15(a) that permitting leave to amend is strongly encouraged; and (2) the facts and procedural history of this case definitely provide grounds for the Court to permit leave to amend (as the Court correctly ruled in May 2003), but conversely, those facts and circumstances would not support a ruling denying leave to amend. Therefore, if the Court were to now vacate the Court's May 6, 2003 Order and rule retroactively that Plaintiff now does not have Leave to amend his Complaint, Plaintiff respectfully suggests that such a ruling is or would be contrary to settled law of the Supreme Court and the Third Circuit stating that leave to amend should be liberally granted. See, Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000), citing Foman v. Davis, 371 U.S. 178, 182 (1962); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

Plaintiff notes that there is nothing in the Court's September 15, 2003 Memorandum or Order that suggests that the Court's May 6, 2003 Order is vacated, modified or clarified or otherwise altered. Nonetheless, if the Court had indeed concluded that Plaintiff had met all the requirements of Rule 15(c) such that his Complaint would relate back, then Plaintiff sees no other explanation for the Court's ruling from the discussion in the September 15, 2003 Memorandum and Order other than that the Court was ruling that the Plaintiff's already filed First Amended Complaint was somehow negated or nullified by the Court's subsequent September 15, 2003 ruling that Arthur's motion to amend came too late . . . . See, the Court's September

15, 2003 Memorandum at p. 13.

The primary reason why this Court should reconsider the September 15, 2003 Memorandum and Order to the extent that Rule 15(a) is implicated is simply because the Court was correct in May of 2003 when the Court granted Plaintiff leave to amend, and nothing has occurred since that ruling that would support the Court's reversal of that May 6, 2003 Order. Perhaps anticipating this argument, the Court's explanation for revisiting Rule 15(a) issues is that: When we [the Court] were considering whether to allow the amendment, the United States was not then a party and thus not in a position to make its objections known. See, the Court's September 15, 2003 Memorandum at p. 9.

Plaintiff agrees that the United States was not technically a party to the case in April, 2003 when the Motion for Leave to Amend was considered, but the second part of the Court's statement — that the United States was not in a position to make its objections known — is simply not supported and in fact it is clearly contradicted by the record evidence and circumstances of this case for at least three reasons.

First, as Plaintiff has previously contended, no party, including the United States, has yet to make any objection to the Court's May 6, 2003 Order granting Plaintiff leave to amend his Complaint specifically or even generally on Rule 15(a) grounds. Neither Defendant Dyn Marine nor Defendant Maersk ever asked for reconsideration of this ruling by the Court. Moreover, the United States in its Motion to Dismiss never invokes Rule 15(a) or otherwise states that this Court made a mistake in granting Plaintiff leave to amend in May, 2003. The United States' arguments in its Motion to Dismiss are confined only to the relation back issue and thus the United States still has never

raised any objection to the Court's May 6, 2003 Order granting Plaintiff leave to amend[5].

Second, as this Court is well aware, the United States is represented by the <u>exact same legal counsel</u>, (Mindee Reuben, Michael Vincenzo, Michael Hollister, et al.) that represented Defendants Maersk and Dyn Marine in this litigation and it is undisputed that the United States was aware of this litigation within days of when the Original Complaint was filed back in May 2002. In reality, those legal counsel have been representing the interests of the United States from "Day One" of this lawsuit because those interests were consistent with and even subsumed the interests of their contractors Maersk and Dyn Marine.

If there is any doubt about that, the Court only needs to consult the contracts between the United States and both Dyn Marine and Maersk that are record evidence in this case and that establish the fact that the United States was keenly involved in the efforts by Maersk and Dyn Marine to oppose Plaintiff's Motion for Leave to Amend His Complaint. The government contracts between the Department of the Navy and the Defendant contractors contain standard clauses which emphatically ensure that the United States' legal interests are fully protected by counsel for the contractors. For example, one of the contracts that is in the record in this case between Maersk and the Department of the Navy (Contract No. 00033-00-C-2100) contains the following language (in relevant part) which leaves little doubt that the United States' interests were fully represented at the time this Court adjudicated Plaintiff's Motion for Leave

---

[5] See, Defendant United States' July 14, 2003 Memorandum of Law supporting its Motion to Dismiss at p. 7-9.

back in May 2003:

> **ATTACHMENT C   P&I GUIDELINES**
>
> In the event of litigation against the Government, the Vessel, the Contractor, or the Contractor's underwriters, the following guidelines must be followed:
>
> (a) The Torts Branch, Civil Division, U.S. Department of Justice (hereafter "DOJ"), ensures the integrity of the Government's public vessel defense and other limitations on the Government's waiver of sovereign immunity.  <u>DOJ has firm policies, positions and views concerning these defenses, and cooperation between private P&I counsel and DOJ is essential to their preservation</u> . . . .
>
> (e) . . . DOJ reserves the right to and may directly handle any motion practice involving such issues.  Also, whether appearing during a first screening of a complaint or by later developments, <u>DOJ will determine whether it will handle directly, or will allow P&I counsel to handle dismissal of actions against any defendant other than the United States;  "relation back" amendments to pleadings to substitute the United States out of time</u> . . . .

<u>See</u>, Plaintiff's **Exhibit "3"** attached hereto (emphasis added).  Thus, there can be little doubt (unless Maersk breached this contract which notion there is no evidence to support) that the United States and the DOJ was actively involved in the process of opposing Plaintiff's Motion for Leave to Amend His Complaint.  Any conclusion that the United States did not have the opportunity to object to Plaintiff Arthur's Motion For Leave is simply not supported by the record evidence in this case.

      Third, if the United States did not believe that Defendants Maersk and Dyn Marine would fully represent the United States' interests in opposing the Motion for Leave to Amend, the United States should have intervened in this litigation pursuant to Federal Rule of Civil Procedure 24.  The United States made no move to intervene, and

therefore, the United States cannot credibly contend that its interests were not represented during proceedings and briefing on Plaintiff's Motion for Leave to Amend. Likewise, the Court's statement that the United States was "not in a position to make its objections known" (September 15, 2003 Memorandum Opinion at 9) is contrary to the notion that the United States could have intervened into a lawsuit of which it was fully aware of but failed to do so. The United States did not intervene because the United States knew its interests were being fully represented by counsel for its contractors Maersk and Dyn Marine. Accordingly, there is no evidence to support the Court's statement that the United States did not have the opportunity to object to Plaintiff's Motion for Leave to Amend his Complaint to add the United States as a Defendant.

    **C.**     **This Court's Statement That Plaintiff Was Dilatory In Pursuing His Rights Is Contradicted By The Active Docket Activity, Plaintiff's Efforts To Discover Information And Defendants' Dilatory Conduct In Withholding Evidence From Plaintiff In Violation Of Rule 37(c).**

To the extent that the Court's ruling is based on the conclusion that Plaintiff was dilatory in pursuing his rights, such a conclusion is contradicted by: (1) the Docket of this case showing the great amount of activity between October 2002 and April 2003 when Plaintiff moved to amend the Complaint, (2) the prior rulings made by the Court both permitting Plaintiff to take discovery pursuant to Federal Rule of Civil Procedure 56(f) and permitting Plaintiff in May, 2003 to amend his Complaint to add the United States as a Defendant; and (3) the actions taken by the Plaintiff to doggedly pursue his claim against prior Defendants Maersk and Dyn Marine and the current Defendant United States.

Although the Court is already familiar with the history of this action, the following

chronology is relevant to the Court's analysis in the September 15, 2003 Memorandum and Opinion:

(1) October 15, 2002 – this Court convened a Status Conference, wherein the Court discussed scheduling matters with counsel for all of the parties as well as other aspects of the case. Specifically, the parties discussed a timetable for exchanging Initial Disclosures pursuant to Federal Rule of Civil Procedure 26(a), and after this discussion the Court orally directed the parties to make Initial Disclosures within ten (10) days of the Status Conference. See Declaration of Brian P. McCafferty (attached for the Court's convenience at **Exhibit 4"** hereto).

Moreover, during the October 15, 2002 Status Conference, counsel for Defendant Maersk specifically raised the issue that Plaintiff's claims might be barred pursuant to the Public Vessels Act, 46 U.S.C. § 781 et seq., and/or the Suits in Admiralty Act, 46 U.S.C. § 742 et seq. See Id. Plaintiff's counsel (attorney Brian McCafferty stated during the Status Conference that if the Defendants believed they may have a defense that would terminate Plaintiff's claims it would be best for all concerned if the Defendants filed dispositive motions setting forth the arguments supporting such a defense as soon as possible. See Id. The Court likewise agreed with Plaintiff's counsel's statement and encouraged the Defendants to raise those defenses as soon as possible. See Id.

(2) October 22, 2002 – Plaintiff Arthur served Defendants with his Initial Disclosures and included 209 pages of documents and specific calculations as to Plaintiff's damages. See, Plaintiff's Initial Disclosures (in record). Plaintiff was the only

-14-

party to comply with the Court's directive that Initial Disclosures be exchanged within ten (10) days of the Status Conference.

(3)     November 4, 2002    Defendant Dyn Marine served the Plaintiff with Initial Disclosures which included some documents, but which failed to include the September 17, 1999 contract between Defendant Dyn Marine and the United States Military Sealift Command (USMC), upon which Defendant Dyn Marine later used as its sole support for its Motion For Summary Judgment (filed January 22, 2003, see below).

(4)     November 15, 2002    Maersk's counsel, A. Robert Degan, sent a letter to Plaintiff's counsel Brian McCafferty acknowledging the ten-day deadline established by the Court at the October 15, 2002 Status Conference and conceding that Maersk had not yet made such Initial Disclosures in response to inquiring phone calls from Plaintiff's counsel Brian McCafferty (A copy of this letter is attached hereto as **Exhibit 5"**).

(5)     December 31, 2002    Plaintiff's counsel, Provost & Umphrey Law Firm, LLP received Defendant Maersk's Initial Disclosures when Dyn Marine's counsel, Michael Hollister, sent a copy to Plaintiff's lead counsel, Brian McCafferty, via overnight mail.  (A copy of Hollister's December 31, 2002 letter is attached hereto as **Exhibit 6 "**).  Inexplicably, Defendant Maersk had further delayed Plaintiff's lead counsel's receipt of their Initial Disclosures by sending them <u>only</u> to co-counsel in Alabama instead of to lead counsel, with whom Maersk had dealt exclusively in this case.  This had not previously occurred and Plaintiff's counsel was never given an explanation as

to why this apparently intentional mistake was made by Maersk or its counsel.[6]

(6) January 22, 2003  Defendant Dyn Marine filed its Motion For Summary Judgment. In support of its Motion For Summary Judgment, Defendant Dyn Marine attached an appendix that purported to be a September 1999 contract between Defendant Dyn Marine and the USMC. This contract had never been previously disclosed or produced despite the obvious connection between the contract and Dyn Marine s defenses in the case.

(7) January 31, 2003  Defendant Maersk filed its Motion For Summary Judgment. In support of its Motion For Summary Judgment, Maersk attached a set of Exhibits which consisted of an affidavit submitted by Frances C. Gapp, a contracting officer for the U.S. Navy, Military Sealift Command, along with attachments that purported to be contracts or portions of contracts between Defendant Maersk and the USMSC.

(8) February 19, 2003  Plaintiff filed Memoranda of Law in Opposition to both Defendants  Motions For Summary Judgment, including a Declaration of Brian P. McCafferty, Esquire Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. In his Affidavit, Plaintiff s counsel requested limited discovery regarding the Motions for Summary Judgment filed by both Defendants, including discovery regarding the contracts between each Defendant and the United States. Subsequent to this filing, the

---

[6] Maersk s Initial Disclosures have a date of December 16, 2002 near the signature line of the document but no certificate of service which reflects when the document was served.

Court convened a telephone conference and granted Plaintiff permission to conduct the described discovery. The Plaintiff also requested sanctions pursuant to Rule 37(c)(1).

(9) March 14, 2003   Plaintiff noticed the depositions of Frances Gapp, Contracting Officer of the USMSC and Trish Pederson, the Director of Human Resources of Dyn Marine Services.

(10) March 18, 2003   Plaintiff took the depositions of Frances Gapp, Contracting Officer of the USMSC and Trish Pederson, the Director of Human Resources of Dyn Marine Services.

(11) March 25, 2003   Plaintiff noticed the deposition of a Maersk Fed. R. Civ. P. 30(b)(6) designee to testify regarding the contracts with the United States that governed the three Maersk operated ships which were the subject of Plaintiff's suit.

(12) March 27, 2003   Plaintiff took the deposition of James E. Gerdes, Director of Contracts of Maersk Line, Limited.

(13) April 14, 2003

  (a) Plaintiff filed his Supplemental Memoranda of Law in Opposition To Defendant Dyn Marine's Motion For Summary Judgment and Defendant Maersk's Motion For Summary Judgment..

  (b) Plaintiff filed a Motion For Leave To Amend His Complaint and a Memorandum Of Law In Support Of His Motion For Leave To Amend His Complaint.

(14) April 28, 2003   Maersk filed Defendant Maersk Line Limited's Opposition To Plaintiff Edward Arthur's Motion To Amend Complaint.

(15) May 1, 2003   Dyn Marine filed its Memorandum In Opposition To Plaintiff's

Motion To Amend Complaint.

(16) May 7, 2003    The Court issued a May 6, 2003 Order Granting Plaintiff's Motion To Amend Complaint.

(17) May 13, 2003    Plaintiff filed a First Amended Complaint, adding the United States as a party. Plaintiff immediately made efforts to serve the United States with this Complaint.

(18) May 15, 2003    The U.S. Attorney accepted service of the First Amended Complaint.

The above chronology establishes that Plaintiff has been diligent in pursuing his rights in this case and certainly has not been guilty of "sleeping on his rights". Plaintiff submits that the above efforts were successful in gathering evidence to support Plaintiff's efforts to amend his complaint and name the United States as a Defendant. Moreover, during this time period, Plaintiff also collected the evidence necessary to support his arguments on the "relation back" doctrine. Accordingly, rather than conclude that Plaintiff was dilatory in pursuing his rights, this Court should conclude that after being damaged by Defendants' dilatory conduct in failing to timely disclose evidence supporting their defenses (as is required by Rule 37 of the Federal Rules of Civil Procedure), Plaintiff acted diligently and reasonably to prosecute his rights and successfully assemble the evidence necessary to support a finding that his amended complaint should relate back against the United States.

### III.    CONCLUSION

Despite the fact that: (1) this Court had already granted Plaintiff leave in May

2003 to add the United States as a Defendant; and (2) this Court concludes or virtually concludes that Plaintiff has met all of the requirements to apply the relation back doctrine pursuant to Rule 15(c); and (3) the standards for reviewing a Motion to Dismiss require this Court to give the benefit of the doubt on any and all factual issues to the non-moving party (the Plaintiff here); and (4) the Supreme Court and courts historically and generally have urged that seaman are the wards of the admiralty courts and should be given favorable treatment by the courts[7], this Court has nonetheless ruled against Plaintiff Arthur and held that the majority of the claims in his First Amended Complaint against the United States must be dismissed.

Based on the foregoing discussion, Plaintiff Arthur respectfully requests that the Court reconsider and vacate the September 15, 2003 Memorandum and Order and enter the attached Proposed Order permitting all of Plaintiff's claims regarding the December 2000 injury to go forward.

                                                                     _____
                                                                     Brian P. McCafferty, Esq.
                                                                     Provost    Umphrey Law Firm, LLP
                                                                     1617 JFK Boulevard, Suite 640
                                                                     Philadelphia, Pennsylvania 19103
                                                                     (215) 569-8840
                                                                     (215) 569-9070 (fax)

                                                                     ATTORNEY FOR PLAINTIFF

Dated: September 29, 2003

---

[7] See e.g., Deisler v. McCormick Aggregates, Co., 54 F.3d 1074 (3d Cir. 1995); and Barnes v. Andover Co. L.P., 900 F.2d at 633-34 (3d Cir. 1990).

## **CERTIFICATE OF SERVICE**

I,I, Brian P. McCafferty, Esq., hereby I, Brian P. McCafferty, Esq., hereby certI, Brian P. McC

MemorandumMemorandum Of Law In Support of Plaintiff s Motion For Reconsideration was served upon

the following counsel by first class mail on September 29, 2003:

>Mindee Reuben, Esquire
>Fox Rothschild O Brien & Frankel, LLP
>2000 Market Street, 10th Floor
>Philadelphia, PA 19103
>
>Michael T. Hollister, Esquire
>Weber Gallagher Simpson, et al.
>The Belgravia Building
>1811 Chestnut Street, Suite 600
>Philadelphia, PA 19103

>_____
>Brian P. McCafferty