## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD ARTHUR,

                          Plaintiff,

          vs.                                    CIVIL ACTION 02-CV-2931

THE UNITED STATES OF AMERICA,

                          Defendant.

## O R D E R

AND NOW, upon consideration of the United States' Motion for Transfer it is

hereby ORDERED and DECREED that said Motion is **GRANTED**.  Plaintiff's First

Amended Complaint against the United States shall be transferred to the United Stated

District Court for the Southern district of Georgia

### BY THE COURT:

_____

                                        Harvey Bartle, III, J.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD ARTHUR,

                            Plaintiff,

          vs.                                          CIVIL ACTION 02-CV-2931

THE UNITED STATES OF AMERICA,

                            Defendant.

**FILED MAY 1 5 2006**

## DEFENDANT, THE UNITED STATES'
## MOTION FOR TRANSFER

Defendant, the United States of America, by and through its attorneys, Fox

Rothschild LLP, files the within Motion for Transfer of he present suit to the United

Stated District Court for the Southern district of Georgia.  In support of its Motion, the

United States incorporates its attached Memorandum of Law and Exhibits as if fully set

forth at length herein.

                    Respectfully submitted,

                    PATRICK L. MEEHAN
                    United States Attorney


                    PETER F. FROST
                    Senior Admiralty Counsel
                    U.S. Dept. of Justice
                    Civil Division, Torts Branch
                    P.O. Box 14271
                    Washington, D.C. 20044-4271

FOX ROTHSCHILD LLP
A. Robert Degen, Esq./I.D. #19336
2000 Market Street, 10th Floor
Philadelphia, PA 19103
(215) 299 – 2000

Attorneys for Defendant,
The United States of America

Date:  May 10, 2006

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD ARTHUR,

                              Plaintiff,

        vs.                                          CIVIL ACTION 02-CV-2931

THE UNITED STATES OF AMERICA,

                              Defendant.

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT, THE UNITED STATES'
<u>MOTION FOR TRANSFER</u>

Defendant, the United States of America, by and through its attorneys, Fox

Rothschild LLP, files the within Memorandum of Law in Support of its Motion For

Transfer of the present suit to the United Stated District Court for the Southern district of

Georgia and avers in support thereof as follows:

**I.      <u>INTRODUCTION</u>**

The United States moves pursuant to 28 U.S.C § 1406 for an order transferring

the present suit for lack of proper venue.  The proper venue is set forth in the Public

Vessels Act, 46 U.S.C. App. § 782.  Under the facts of this case, the statute require that

suit be brought in the District in which the Plaintiff resides, the Southern District of

Georgia.

## II.    BACKGROUND

### A.    Procedural History

This maritime lawsuit, brought pursuant to the Suits in Admiralty Act, 46 U.S.C. App. § 782, was initially commenced by Edward Arthur ("Arthur") against Maersk, Inc. d/b/a Maersk Line Ltd. ("Maersk") and Dyn-Marine Services ("Dyn Marine") on May 16, 2002, in this District Court. Both Maersk and Dyn-Marine were dismissed from this litigation on May 16, 2003.

On May 13, 2003, the United States was named as a defendant in this litigation. Subsequently, the United States filed motions to dismiss Arthur's First Amended Complaint ("FAC") based on the statute of limitations and improper venue. On August 12, 2003, this Court ruled upon the motions to dismiss as evidenced by the Memorandum and Order attached hereto as Exhibit "A". In short, the Court dismissed all of the claims in the FAC against the United States except for a claim for maintenance and cure. The surviving maintenance and cure claim relates to an injury allegedly sustained by Arthur in December 2000 while aboard the USNS ASSERTIVE. The Court rejected the United States' request that case be dismissed due to improper venue based upon failure to prove the location of the USNS ASSERTIVE on May 13, 2003, the date Suit was commenced against the United States. Upon the United States' Motion to Reconsider, the Court again denied its motion holding that the United States had failed in its burden of proof as to the location of the vessel. Attached as Exhibit "B" is a copy of the Courts Memorandum and Order. Following an Appeal to the Third Circuit, this matter again finds itself before this Court.

2

### B.    Essential Facts

In his First Amended Complaint (hereinafter FAC), Arthur states that he is a resident of Dublin, Georgia. See FAC at ¶ 2. As evidenced by the attached legend for Georgia, which was downloaded from the website for the United States District Court, Southern District of Georgia, Dublin is located in the Southern District of Georgia in the United States District Court system. See Exhibit "C", URL

http://www.gas.uscourts.gov/ga_county.pdf.

As evidenced by the attached affidavit of James Beliveau, on May 16, 2002, the date on which this litigation was commenced against Maersk and Dyn-Marine, the USNS ASSERTIVE was outside the territorial waters of the United States performing a mission near Yokohama, Japan. See Exhibit "D", Affidavit of James Beliveau, Project Officer, SMS Program, Military Sealift Command. On May 13, 2003, the date on which the United States was named a party in this litigation, the USNS ASSERTIVE was outside the territorial waters of the United States performing a mission near Yokohama, Japan. The ship departed the Yokohama area on June 11, 2003, and headed to Pearl Harbor, Hawaii, where it arrived on June 25, 2003. Id. The U.S.N.S. ASSERTIVE has remained in Pearl Harbor since June 25, 2003, where she was being decommissioned. Id.

The United States respectfully requests that this Court to either dismiss Arthur's FAC or transfer this matter to the appropriate venue, the Southern District of Georgia.

### III.    ARGUMENT

In cases brought under the Public Vessels Act, such as the instant matter, venue is governed by 46 U.S.C. App. § 782. The relevant portion of Section 782 provides:

> Such suit shall be brought in the district court of the United
> States for the district in which the vessel or cargo charged

3

> with creating the liability is found within the United States,
> or if such vessel or cargo be outside the territorial waters of
> the United States, then in the district court of the United
> States for the district in which the parties so suing, or any
> of them, reside or have an office for the transaction of
> business in the United States . . . .

46 U.S.C. App. § 782. The term "found" is defined as of the date of filing.  See

Asociacion de Pescadores de Vieques, Inc. v. United States, 497 F. Supp. 54 (D. P.R.

1979) ("the present action was filed in the wrong forum, because pursuant to Section 782

. . . it had to be brought in the district court of the United States for the District of

Virginia in which the vessels charged with creating the liability were found at the time of

the filing of the libel").

In the present case, the USNS ASSERTIVE was not "found" within the United

States on either May 16, 2002, when the litigation was originally commenced, or May 13,

2003, when the United States was joined as a party.  The affidavit of Mr. Beliveau

indicate that the USNS ASSERTIVE was in the vicinity of Yokohama Japan, on May 16,

2002 and May 13, 2003.  See Exhibit "D".  Thus, the only outstanding issue is whether

the Eastern District of Pennsylvania is where "the parties so suing, or any of them, reside

or have an office for the transaction of business in the United States" pursuant to Section

782.

In construing the venue provision of the Public vessels Act, the Supreme Court's

in Hoiness v. United States, 335 U.S. 297 (1948) stated:

> Congress, by describing the district where the suit was to
> be brought, was not investing the federal courts 'with a
> general jurisdiction expressed in terms applicable alike to
> all of them' . . . . It was dealing with the convenience of the
> parties in suing or being sued at the designated places.  The
> purpose of the Act was to grant seamen relief against the
> United States in its own courts.  *The concepts of residence
> and principal place of business obviously can have no*

4

> *relevance when applied to the United States. It is*
> *ubiquitous through the land and, unlike private parties, is*
> *not centered at one particular place.*

Id. at 302 (citations omitted, emphasis added).

The plain language of the Section 782 necessitates the same conclusion reached by the Supreme Court: "the parties so suing" refers to the parties actually bringing the lawsuit, and "or any of them" refers to any one of the parties bringing the lawsuit. The United States did not bring this lawsuit. See 46 U.S.C. App. § 782.

Based on the foregoing, the only proper place for Arthur to bring suit is the District Court emcompassing his place of residence (Dublin, Georgia), i.e., the Southern District of Georgia. Thus, the United States respectfully requests that this Court enter an Order either dismissing the FAC without prejudice or transfer venue of this matter to the Southern District of Georgia.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney

PETER F. FROST
Senior Admiralty Counsel
U.S. Dept. of Justice
Civil Division, Torts Branch
P.O. Box 14271
Washington, D.C. 20044-4271

FOX ROTHSCHILD LLP
A. Robert Degen, Esq./I.D. #19336
2000 Market Street, 10th Floor
Philadelphia, PA 19103
(215) 299-2000

Date: May 10, 2006

Attorneys for Defendant,
The United States of America

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD ARTHUR             :        CIVIL ACTION
                          :
        v.                :
                          :
UNITED STATES OF AMERICA  :        NO. 02-2931

MEMORANDUM

Bartle, J.                                August 12, 2003

        Before the court are the motions[1] of the United States
to dismiss on the basis of the statute of limitations.

        Plaintiff Edward Arthur ("Arthur") has brought this
personal injury action pursuant to the Jones Act, 46 U.S.C. § 688
and the Suits in Admiralty Act, 46 U.S.C. § 741 et seq.  He
maintains that he has suffered four separate injuries while
working as a merchant seaman for Maersk, Inc. ("Maersk") and Dyn
Corporation Technical Services ("Dyn") aboard several United
States naval vessels.  Plaintiff has asserted claims of
negligence, unseaworthiness and failure to pay maintenance and
cure in connection with these four incidents.

        For purposes of defendant's motions to dismiss, we
accept as true all well-pleaded factual allegations in the
amended complaint and draw in plaintiff's favor any reasonable

_____

1.  The United States filed two separate motions to dismiss.  One
relates to the three injuries which occurred while plaintiff was
employed as a merchant seaman for Maersk, Inc.  The other relates
to the injury which took place when plaintiff worked for Dyn
Corporation Technical Services.

AUG 1 3 2003

inferences therefrom.  See Hishon v. King & Spalding, 467 U.S.

69, 73 (1984); Oshiver v. Levin, Fishbein, Sedran & Berman, 38

F.3d 1380, 1391 (3d Cir. 1994).  Of course, we need not accept

bald assertions or legal conclusions.  Morse v. Lower Merion Sch.

Dist., 132 F.3d 902, 906 (3d Cir. 1997).

I.

In 1999 and 2000, Arthur was employed at different

times as a merchant seaman by Maersk and Dyn.  Both of these

private companies had contracted with the United States Military

Sealift Command, an arm of the United States Navy, to operate the

various vessels on which Arthur worked.

On May 17, 1999, while employed by Maersk aboard the

United States Naval Ship ("U.S.N.S.") Stalwart Tagos-1, Arthur

sustained an injury to his left knee.  He was diagnosed with a

tear of the medial meniscus in his left knee, which was

surgically repaired on June 23, 1999.  He was medically cleared

to return to work in September, 1999.

In early October, 1999, Arthur suffered another knee

injury while an employee of Maersk aboard the U.S.N.S. Capable.

He was found to have a recurrent tear of the medial meniscus of

his left knee.  He underwent surgery to repair the tear on

November 17, 1999 and was authorized to return to work in

February, 2000.

During his employment by Dyn on May 2, 2000 aboard the

U.S.N.S. Littlehales, Arthur experienced a third left knee

injury, specifically another tear of the medial meniscus of his

-2-

left knee, which again was surgically repaired on June 28, 2000.
His physician allowed him to resume work in September, 2000.

Finally, Arthur injured both his left and right knees
while working for Maersk in December, 2000 aboard the U.S.N.S.
Assertive. This time he had a medial meniscal tear of his right
knee and medial osteoarthritis of his left knee. He has been
unable to serve as a merchant seaman since this accident.

On May 16, 2002, he filed this action against Maersk
and Dyn for negligence, unseaworthiness, and failure to pay
maintenance and cure. Both these defendants filed motions for
summary judgment on the ground that they were not proper parties.
They argued that under the undisputed facts, including the terms
of certain contracts, and the relevant statutes, Arthur could
only sue the United States. See 46 U.S.C. §§ 742, 745.

After Maersk and Dyn filed their motions, Arthur moved
to amend his complaint to assert claims against the United
States. We allowed the amendment, and on May 13, 2003 he filed
his amended complaint. Agreeing with Maersk and Dyn, we granted
their motions for summary judgment on May 16, 2003. That left
the United States as the only defendant. Thereafter, it filed
the pending motions to dismiss on all claims against it on the
ground they are time barred.

II.

We will first address Arthur's claims of negligence and
unseaworthiness with respect to his May 17, 1999, October, 1999
and May 2, 2000 injuries. The Suits in Admiralty Act provides

-3-

that "[s]uits as authorized by this chapter may be brought only within two years after the cause of action arises." 46 U.S.C. § 745. The statute of limitations begins to run from the date of the injury. McMahon v. United States, 342 U.S. 25, 27 (1951); Bovell v. United States, 735 F.2d 755, 757 (3d Cir. 1984). The Supreme Court has strictly construed this two-year statute of limitations "as a jurisdictional prerequisite to the waiver of sovereign immunity contained in the [act]." Bovell, 735 F.2d at 756 (citing McMahon, 342 U.S. at 27). Our Court of Appeals has explained that "when a time limitation is considered jurisdictional, it cannot be modified and non-compliance is an absolute bar." Becton Dickinson & Co. v. Wolckenhauer, 215 F.3d 340, 344 (3d Cir. 2000) (citations omitted).

        As noted above, this lawsuit was not filed until May 16, 2002. Even assuming this is the relevant date rather than May 13, 2003, when the United States was added as a defendant, Arthur still began this action more than two years after the May 17, 1999, the October, 1999, and the May 2, 2000 injuries. Thus, his negligence and unseaworthiness claims for these three injuries are barred.

        We turn to Arthur's claims of negligence and unseaworthiness related to his December, 2000 injury. He maintains that since he instituted the action within two years of this incident these claims are timely. While it is true that the action against Maersk and Dyn was filed within this time frame, the Government emphasizes that no claim was made against it for

-4-

more than two years - May 13, 2003 - when Arthur amended his complaint to name it as a party. According to the Government, by that time his claims against it had been extinguished, and the court no longer had jurisdiction over them. Arthur counters that the May 13, 2003 amendment relates back to the date on which he filed his original complaint. If he is correct, his negligence and unseaworthiness claims for the December, 2000 injury are viable.

Under certain circumstances, Rule 15(c) of the Federal Rules of Civil Procedure permits an amendment to relate back to the date of the filing of the complaint. That rule states in relevant part:

> (c)  **Relation Back of Amendments.**  An amendment of a pleading relates back to the date of the original pleading when ...
>
> > (2)  the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
> >
> > (3)  the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Rule 15(c) is intended to ameliorate the harsh result of strict application of the statute of limitations by "prevent[ing] parties against whom claims are made from taking unjust advantage

of otherwise inconsequential pleading errors to sustain a limitations defense."  Fed. R. Civ. P. 15, Advisory Committee Note to 1991 Amendment.

Where, as here, the amendment to the complaint would change the party or name of the party, both Rule 15(c)(2) and (c)(3) must be satisfied.  It is undisputed that the proposed amendment clearly meets the requirement of Rule 15(c)(2) and Rule 15(c)(3)(A).  The new claims against the United States "arose out of the conduct, transaction, or occurrence set forth ... in the original pleading."  Furthermore, the United States does not argue that it failed to receive notice of the institution of the action within the period given for service of the complaint by Rule 4(m) of the Federal Rules of Civil Procedure.[2]  Nor does it contend that it will be prejudiced in maintaining a defense on the merits.

Arthur, however, must also satisfy Rule 15(c)(3)(B). This provision requires that the party to be brought in by amendment "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."  Decisions of our court differ as to whether Rule 15(c)(3)(B) is limited to cases of misnamed or misdescribed parties or whether it also permits the addition of new parties never even described in the action. Compare Dalicandro v. Legalgard, Inc., No. Civ. A. 99-3778, 2003

---

2.  A party has 120 days under Rule 4(m) in which to serve a complaint after it is filed.  Fed. R. Civ. P. 4(m).

WL 182942, at *6-*7 (E.D. Pa. Jan., 23, 2003), and Mailey v. SEPTA, 204 F.R.D. 273, 275-76 (E.D. Pa. 2001), with Trant v. Towamencin Township, No. Civ. A. 99-134, 1999 WL 317032, at *6 (E.D. Pa. May 20, 1999), Heinly v. Queen, 146 F.R.D. 102, 107 (E.D. Pa. 1993), and Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc., 801 F. Supp. 1450, 1456-57 (E.D. Pa. 1992).

Even assuming that plaintiff's failure to name the United States as a defendant at the time he filed his original complaint qualifies as a mistake under Rule 15(c)(3)(B), the amendment to his complaint cannot relate back to the initial filing date. The statute of limitations in the Suits in Admiralty Act is jurisdictional in nature, and thus its two-year limitations period "is a restriction upon the jurisdiction of the district court." States Marine Corp. of Del. v. United States, 283 F.2d 776, 779 (2d Cir. 1960). Once the two years have elapsed, we have no power to hear any claim first asserted against the United States since, as the sovereign, it has not consented to be sued under such circumstances. See Roberts v. United States, 498 F.2d 520, 526-27 (9th Cir. 1974); Nowery v. United States, 107 F. Supp. 223 (E.D. Pa. 1952).

Arthur did not assert any claims against the United States for negligence or unseaworthiness as to his December, 2000 injury until he filed his amended complaint on May 13, 2003. These claims could no longer be instituted against the United States after December, 2002 because the court no longer had jurisdiction to adjudicate them. Unlike the situation where the

-7-

statute of limitations is merely an affirmative defense to
prevent enforcement of an otherwise viable claim, we do not see
how Rule 15 can revive our power to hear a case once the
jurisdictional clock has run.  This clearly does not qualify as
an "inconsequential pleading error[]."  See Fed. R. Civ. P. 15,
Advisory Committee Note to 1991 Amendment.  Arthur's amendment to
his complaint in May, 2003 cannot breathe life into claims that
were extinguished six months earlier when we lost subject matter
jurisdiction.

III.

Plaintiff also has brought claims for maintenance and
cure for his four injuries.  Under general maritime law, a member
of a ship's crew who is injured while serving aboard the vessel
is entitled to recover maintenance and cure.  "Maintenance is the
living allowance for a seaman while he is ashore recovering from
injury or illness.  Cure is payment of medical expenses incurred
in treating the seaman's injury or illness."  O'Connell v.
Interocean Mgmt. Corp., 90 F.3d 82, 84 (3d Cir. 1996) (citations
omitted).  An employer is obligated to pay maintenance and cure
"until the seaman has reached the point of maximum cure, that is
until the seaman is cured or his condition is diagnosed as
permanent and incurable."  Id. (citation omitted).  The
obligation to pay maintenance and cure "is a continuous one."
Loverich v. Warner Co., 118 F.2d 690, 693 (3d Cir. 1941).

As with claims of negligence and unseaworthiness, the
two-year statute of limitations of the Suits in Admiralty Act

applies to an action for failure to pay maintenance and cure.  46

U.S.C. § 745; McMahon, 342 U.S. at 26.  "[A] continuous failure

to provide maintenance and cure must be regarded as giving rise

to successive breaches of contract with successive [two]-year

periods of limitation commencing anew from day to day."  Loverich

v. Warner Co., 36 F. Supp. 943, 947 (E.D. Pa. 1940).  As Judge

Frederick V. Follmer of this court stated many years ago, a

seaman is "entirely within his rights in asserting his claim for

maintenance and cure for the two year period immediately

antedating the filing of the [claim]."  Kruhmin v. United States,

81 F. Supp. 689, 690 (E.D. Pa.), aff'd, 177 F.2d 906 (3d Cir.

1949).  Therefore, even if a seaman files an otherwise valid

claim for maintenance and cure more than two years after any

injury, "the shipowner ha[s] a continuing duty to supply [it]

during the two-year period prior to the date of filing the

[claim]."  MacInnes v. United States, 189 F.2d 733, 736 (1st Cir.

1951); see Rashidi v. Am. President Lines, Ltd., Civ. A. No. 94-

1029, 1994 WL 321031, at *4 (E.D. La. June 2, 1994); Danstrup v.

The Richmond P. Hobson, 112 F. Supp. 851 (E.D.N.Y. 1953).  But

see Bullen v. United States, No. C93-757Z, 1993 WL 742685 (W.D.

Wash. Nov. 3, 1993), aff'd, No. 93-36123, 1994 WL 192102 (9th

Cir. May 16, 1994).  If the law were otherwise, a responsible

party could wrongly stop payment of maintenance and cure more

than two years after the seaman's injury, and the latter would

have no remedy.

As stated above, a seaman is entitled to maintenance and cure until he has reached maximum cure or his condition is diagnosed as permanent and incurable. In his amended complaint, Arthur maintains that his knee was surgically repaired after his May 17, 1999 injury and that he was medically cleared to return to work in September, 1999. Likewise, he alleges that a doctor performed knee surgery after his October, 1999 injury and cleared him to return to work in February, 2000. Therefore, he reached maximum cure more than two years prior to the time he brought suit on May 16, 2002, even assuming that this is the correct date to use in calculating the limitations period. As a result, the clock has run on any claim for maintenance and cure as to these two injuries.

Arthur also has asserted a claim for maintenance and cure for his May 2, 2000 injury. In his amended complaint, he avers that he underwent knee surgery after his May 2, 2000 accident and was authorized to return to work in September, 2000. While he began suit on May 16, 2002, more than two years after his May 2, 2000 accident, he alleges that he was entitled to maintenance and cure payments until September, 2000 when he reached maximum cure. Since maintenance and cure is a continuing obligation, such a claim would not be barred by the statute of limitations if Arthur had sued the United States when he sued Maersk and Dyn. However, he did not do so until May 13, 2003, more than two years after he reached maximum cure as to his May 2, 2000 accident. The statute of limitations therefore

-10-

operates as a jurisdictional bar and extinguishes his claim against the United States for maintenance and cure for this injury.

Finally, we must determine whether Arthur's claim for maintenance and cure for his December, 2000 injury aboard the U.S.N.S. <u>Assertive</u> is stale. His amended complaint alleges that since the time of his last injury, his "left knee has deteriorated considerably, ultimately developing into medial osteoarthritis. Plaintiff Arthur has recently had a high tibial osteotomy surgery, and his treating physician has concluded that he will ultimately require a total knee replacement." He further avers that he has been unable to return to work since his December, 2000 accident. Accepting as true the well-pleaded factual allegations in the amended complaint, we read it as stating that Arthur has not yet reached maximum cure for this injury. Thus, the statute of limitations does not prevent any claim for maintenance and cure which reaches back to May 14, 2001, two years before the United States was added as a party.[3]

IV.

The United States further maintains that even if Arthur has asserted any viable claims against it, we should dismiss this action because venue is improper in the Eastern District of

_____

3. Arthur filed a motion for leave to amend his complaint on April 14, 2003. The court granted Arthur's motion on May 6, 2003, and he filed his amended complaint a week later on May 13, 2003. Plaintiff does not argue that either the April 14 or May 6 date is relevant for statute of limitations purposes.

Pennsylvania.[4]  See Fed. R. Civ. P. 12(b)(3).  The venue

provision of the Suits in Admiralty Act provides, in relevant

part:

> Such suit shall be brought in the district
> court of the United States for the district
> in which the vessel or cargo charged with
> creating the liability is found within the
> United States, or if such vessel or cargo be
> outside the territorial waters of the United
> States, then in the district court of the
> United States for the district in which the
> parties so suing, or any of them, reside or
> have an office for the transaction of
> business in the United States ....

46 U.S.C. § 782.  The United States, as the defendant, bears the

burden of establishing that venue is improper.  Myers v. Am.

Dental Ass'n, 695 F.2d 716, 724-25 (3d Cir. 1982); Simon v. Ward,

80 F. Supp. 2d 464, 467-68 (E.D. Pa. 2000).

In order to satisfy its burden the United States has

attached an affidavit of Cathy O'Connell ("O'Connell"), the

Claims Administrator for Maersk, which sets forth where the

U.S.N.S. Stalwart-Tagos-1, U.S.N.S. Capable, and U.S.N.S.

Assertive were located on May 16, 2002, the date Arthur filed his

original complaint.  According to O'Connell, the U.S.N.S.

Assertive, the vessel on which Arthur was injured in December,

2000, was in Yokohama, Japan.

Assuming that the relevant date for determining proper

venue was May 16, 2002, venue is proper under § 782.  Since the

vessel was outside of the territorial waters of the United States

---

4.  The United States put forth its venue argument in its motion
to dismiss the claims related to the three Maersk vessels.

on that date, venue lies where "the parties so suing, or any of them, reside or have an office for the transaction of business in the United States."[5]  46 U.S.C. § 782.  The United States certainly has an office for the transaction of business in the Eastern District of Pennsylvania.

If the relevant date for assessing proper venue is May 13, 2003, the date on which the United States became a party, the Government has failed to satisfy its burden to establish improper venue.  The Government did not provide the court with any information on the location of the U.S.N.S. <u>Assertive</u> at that time.

V.

In sum, we will grant the motions of the United States to dismiss the claims of plaintiff for negligence and unseaworthiness.  We will also grant its motions to dismiss with respect to plaintiff's claims for maintenance and cure except for his claim for maintenance and cure for his December, 2000 injury for the period from May 14, 2001 forward.  We will deny the Government's motion to dismiss for improper venue.

---

5.  Arthur and the Government assume "or any of them" in the phrase "the parties so suing, or any of them" includes parties who are defendants.  For purposes of deciding the pending motions we will assume that this interpretation is correct.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD ARTHUR : CIVIL ACTION
:
v. :
:
UNITED STATES OF AMERICA : NO. 02-2931

ORDER

AND NOW, this 12th day of August, 2003, for the
reasons set forth in the accompanying Memorandum, it is hereby
ORDERED that:

(1)  the motions of defendant United States of America
to dismiss the claims of plaintiff for negligence and
unseaworthiness are GRANTED;

(2)  the motions of defendant United States of America
to dismiss the claims of plaintiff for maintenance and cure as to
his May 17, 1999, October, 1999 and May 2, 2000 injuries are
GRANTED;

(3)  the motions of defendant United States of America
to dismiss the claim of plaintiff for maintenance and cure for
his December, 2000 injury for any period prior to May 14, 2001 is
GRANTED but otherwise DENIED; and

(4)  the motion of defendant United States of America
to dismiss for improper venue is DENIED.

BY THE COURT:

_____
J.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD ARTHUR                    :        CIVIL ACTION
                                 :
          v.                     :
                                 :
UNITED STATES OF AMERICA         :        NO. 02-2931

<u>MEMORANDUM</u>                    FILED SEP 1 5 2003

Bartle, J.                                September 15, 2003

        Before the court is the motion of plaintiff Edward

Arthur ("Arthur") for reconsideration of this court's Order of

August 12, 2003 in which we dismissed in part his complaint

against the defendant, United States of America.  The latter has

also moved for reconsideration to the extent that our Order

denied its motion to dismiss for improper venue.

                              I.

        Arthur, a merchant seaman, filed his original complaint

pursuant to the Jones Act, 46 U.S.C. § 688, and the Suits in

Admiralty Act, 46 U.S.C. § 741 <u>et seq.</u>, against his employers

Maersk, Inc. ("Maersk") and Dyn Corporation Technical Services

("Dyn") for four separate injuries he allegedly suffered while

working aboard the United States Naval Ship (U.S.N.S.) <u>Stalwart</u>

on May 17, 1999, the U.S.N.S. <u>Capable</u> in October, 1999, the

U.S.N.S. <u>Littlehales</u> on May 2, 2000, and the U.S.N.S. <u>Assertive</u>

in December, 2000.  Plaintiff has asserted claims of negligence,

unseaworthiness, and failure to pay maintenance and cure in

connection with these four incidents.

ENTERED

SEP 1 6 2003

CLERK OF COURT

We granted the motions of Maersk and Dyn for summary judgment on May 16, 2003 on the ground that only the United States could be sued for plaintiff's alleged injuries.  On April 14, 2003, while the summary judgment motions were pending, plaintiff filed a motion to amend his complaint to add the United States as a party.  On May 6, 2003 we allowed the plaintiff's motion to amend, and plaintiff filed his amended complaint on May 13, 2003, three days before summary judgment was granted in favor of the two original defendants.

Thereafter, the United States, now a defendant, moved to dismiss the amended complaint on the ground that the two-year statute of limitations under the Suits in Admiralty Act, 46 U.S.C. § 745, barred the action as to all four injuries.  It provides, "suits as ... authorized [by this chapter] may be brought only within two years after the cause of action arises."  Id.  The statute of limitations for claims of this kind begins to run from the date of the injury.  McMahon v. United States, 342 U.S. 25, 27 (1951); Bivell v. United States, 735 F.2d 755, 757 (3d Cir. 1984).

In our August 12, 2003 Memorandum and Order, we decided that the two-year limitation period was jurisdictional. Accordingly, we held that the relation back provision of Rule 15(c) of the Federal Rules of Civil Procedure was of no help to plaintiff and that all of his claims for negligence and unseaworthiness and some of his claims for maintenance and cure

-2-

were barred.  We also denied the Government's motion to dismiss
for improper venue.

                              II.

          Arthur now urges reconsideration of our dismissal with
respect to his injury on the U.S.N.S. Assertive in December,
2000.  He relies on the Supreme Court's decision in Irwin v.
Dep't of Veterans Affairs, 498 U.S. 89 (1990).  The plaintiff in
that case alleged that the Department of Veterans Affairs had
illegally fired him because of his race and physical disability
in violation of Title VII of the Civil Rights Act of 1964, 42
U.S.C. § 2000e, et seq.  The District Court dismissed the case on
the ground that the plaintiff had missed a filing deadline under
the statute, and the Court of Appeals affirmed.  Both courts
concluded that the deadline was jurisdictional since the
Government's waiver of sovereign immunity must be strictly
construed.  While upholding the dismissal, the Supreme Court
rejected the notion that the limitation period was jurisdictional
and in doing so ventured far beyond the particulars of Title VII,
the statute in issue.  The Court announced that "this case
affords us an opportunity to adopt a more general rule to govern
the applicability of equitable tolling in suits against the
Government."  Id. at 95.  It reasoned that limitations periods
enacted by Congress, at least in statutes in which private
parties as well as the Government can be sued, are presumptively
subject to equitable tolling.  The Court explained:

                    Once Congress has made such a waiver [of
               sovereign immunity], we think that making the

                              -3-

> rule of equitable tolling applicable to suits
> against the Government, in the same way that
> it is applicable to private suits, amounts to
> little, if any, broadening of the
> congressional waiver. Such a principle is
> likely to be a realistic assessment of
> legislative intent as well as a practically
> useful principle of interpretation. We
> therefore hold that the same rebuttable
> presumption of equitable tolling applicable
> to suits against private defendants should
> also apply to suits against the United
> States. Congress, of course, may provide
> otherwise if it wishes to do so.

Id. at 95-96.

That being said, the Court was then quick to caution,

"Federal courts have typically extended equitable relief only

sparingly." Irwin, 498 U.S. at 96. It added, "[b]ecause the

time limits imposed by Congress in a suit against the Government

involve a waiver of sovereign immunity, it is evident that no

more favorable tolling doctrine may be employed against the

Government than is employed in suits between private litigants."

Id.

Upon reconsideration, we agree with Arthur that under

the broad language of Irwin the two-year bar of the Suits in

Admiralty Act can no longer be considered to be jurisdictional as

it had previously been interpreted. Cf. Bovell v. U.S. Dep't of

Def., 735 F.2d 755, 756-57 (3d Cir. 1984). Title VII, which was

the statute in Irwin, stated that "[w]ithin thirty days of

receipt of notice of final action taken by ... the Equal

Employment Opportunity Commission ... an employee ... may file a

civil action ...." The Supreme Court made it clear that

equitable tolling applied not only with respect to this statute

but also to a statute, arguably more restrictive, which provides, "[E]very claim ... shall be barred unless the petition ... is filed ... within six years ...." Id. at 95.  Our Court of Appeals recently reached the conclusion, based on Irwin, that the limitations period of the Federal Tort Claims Act, 28 U.S.C. § 2401(b), is not jurisdictional.  Hughes v. United States, 263 F.3d 272, 278 (3d Cir. 2001).  Under that Act, "a tort claim against the United States shall be forever barred unless it is presented in writing ... within two years after such claim accrues or unless action is begun within six months after the date of mailing ... of notice of final denial of the claim by the agency to which it was presented."  In a similar vein, the Suits in Admiralty Act states that "[s]uits as herein authorized may be brought only within two years after the cause of action arises ...."  46 U.S.C. § 745.  For jurisdictional purposes, we see no reason to distinguish the latter from the limitation periods in Title VII or the Federal Tort Claims Act.

Because the time bar in the Suits in Admiralty Act can no longer be deemed to be jurisdictional, plaintiff contends that certain of his claims against the United States remain viable as a result of the relation back provision of Rule 15(c) of the Federal Rules of Civil Procedure.  That rule, which by its terms is applicable to the Government, provides in relevant part:

> (c) **Relation Back of Amendments.**  An amendment of a pleading relates back to the date of the original pleading when ...
>
>> (2)  the claim or defense asserted in the amended pleading arose out of the conduct,

-5-

transaction, or occurrence set forth or attempted
to be set forth in the original pleading, or

(3)   the amendment changes the party or the
naming of the party against whom a claim is
asserted if the foregoing provision (2) is
satisfied and, within the period provided by Rule
4(m) for service of the summons and complaint, the
party to be brought in by amendment (A) has
received such notice of the institution of the
action that the party will not be prejudiced in
maintaining a defense on the merits, and (B) knew
or should have known that, but for a mistake
concerning the identity of the proper party, the
action would have been brought against the party.

Rule 15(c), of course, is intended to ameliorate the harsh result

of strict application of the statute of limitations by

"prevent[ing] parties against whom claims are made from taking

unjust advantage of otherwise inconsequential pleading errors to

sustain a limitations defense."  Fed. R. Civ. P. 15, Advisory

Committee Note to 1991 Amendment.

It is undisputed that plaintiff's amended complaint

clearly meets the requirements of Rule 15(c)(2) and Rule

15(c)(3)(A).  The claims against the United States "arose out of

the conduct, transaction, or occurrence set forth ... in the

original pleading."  Furthermore, the United States does not

assert that it failed to receive notice of the institution of the

action within the period authorized for service of the complaint

by Rule 4(m) of the Federal Rules of Civil Procedure.[1]  Nor does

it contend that it will be prejudiced in maintaining a defense on

the merits.  Arthur, however, must also satisfy Rule 15(c)(3)(B).

---

1.   A party has 120 days under Rule 4(m) in which to serve a
complaint after it is filed.  Fed. R. Civ. P. 4(m).

-6-

This provision requires that the party to be brought in by
amendment "knew or should have known that, but for a mistake
concerning the identity of the proper party, the action would
have been brought against the party."

The Third Circuit has interpreted "mistake" in Rule
15(c)(3)(B) broadly.  For example, in <u>Varlack v. SWC Caribbean,
Inc.</u>, 550 F.2d 171 (3d Cir. 1977), the court allowed relation
back when the description in the complaint, an "Unknown Employee
of Orange Julius Restaurant," was later replaced with the name of
an actual employee.  The court ruled that the original pleading
had contained a "mistake concerning the identity of a party"
under Rule 15(c)(3)(B).  <u>Id.</u> at 175.  In <u>Advanced Power Systems,
Inc. v. Hi-Tech Systems</u>, 801 F. Supp. 1450 (E.D. Pa. 1992), this
court determined that a mistake included not only misnomers and
errors in nomenclature but "new parties that were never
originally named or described."  <u>Id.</u> at 1457.  There, the court
allowed a real party to be substituted for a "John Doe"
defendant.  <u>Id.</u>  It also concluded that a mistake can be one of
legal judgment as well as one of fact.  <u>See Talifero v. Costello</u>,
467 F. Supp. 33, 36 (E.D. Pa. 1979).  The Third Circuit, in dicta
in <u>Singletary v. Pennsylvania Department of Corrections</u>, 266 F.3d
186, 201 n.4 & 5 (3d Cir. 2001) cited with approval <u>Advanced
Power's</u> allowance of relation back of an amended "John Doe"
complaint.  It recognized that in some situations, such as civil
rights actions against individual police officers, it may be
difficult to ascertain the actual identity of certain defendants

-7-

before the action is begun.  Id.  The court, citing Varlack, made

it clear that not knowing the identity of a party is a mistake

concerning the party's identity under Rule 15(c)(3)(B).

Singletary, supra, at 200-01.

At least one case in this court has distinguished

Advanced Power on the ground that mistake under Rule 15(c)(3)(B)

can occur only when there is a relationship or close identity of

interest between the originally named defendants and those to be

added.  In Mailey v. SEPTA, 204 F.R.D. 273 (E.D. Pa. 2001), the

plaintiff had suffered personal injuries while using a

footbridge.  Various defendants were sued within the limitations

period.  At a court status conference after the statute had run,

plaintiff learned for the first time of two construction

companies that had been working in the area of the bridge at the

time of the accident.  Plaintiff sought to join them under

relation back.  The court denied the motion on the ground that

the failure to join was due to lack of knowledge that the two

construction companies were potentially liable.  According to

Mailey, failure to investigate a claim thoroughly is not what

Rule 15(c)(3)(B) deems to be a mistake.

Here, of course, we are not dealing with a "John Doe"

complaint where it is difficult to identify ahead of time the

names of the proper defendants.  Nor is there an employer-

employee relationship between a named and unnamed party.  Nor is

this a case involving affiliated companies where there is a mix-

up due to similar names or to a complicated corporate family

tree.  Finally, no error occurred because the wrong government
agency or officer was identified.[2]  Instead, Arthur originally
sued Maersk, his employer, rather than the United States, with
which Maersk had a contractual relationship.

Keeping in mind the Third Circuit's generous reading of
Rule 15(c)(3)(B), we will assume that plaintiff's failure to sue
the United States at the outset was an excusable factual or legal
mistake and that all the requirements under Rule 15(c) have been
met.  However, this does not end our inquiry.  The United States
argues that plaintiff had been so dilatory in moving to amend
that it may not have the benefit of relation back.  When we were
considering whether to allow the amendment, the United States was
not then a party and thus not in a position to make its
objections known.

Rule 15(a), among other provisions, permits amendments
to pleadings with the approval of the court.  The rule reads in
relevant part that, "leave shall be freely given when justice so
requires."  The Supreme Court in <u>Foman v. Davis</u>, 371 U.S. 178
(1962), held that a court has discretion in deciding whether or
not to allow an amendment and identified a nonexclusive list of

---

2.  Rule 15(c) provides in relevant part:

> The delivery or mailing of process to the United States
> Attorney, or United States Attorney's designee, or the
> Attorney General of the United States, or an agency or
> officer who would have been a proper defendant if
> named, satisfies the requirement of subparagraphs (A)
> and (B) of this paragraph ... with respect to the
> United States or any agency or officer thereof to be
> brought into the action as a defendant.

-9-

acceptable reasons for the denial of an amendment:   (1) undue
delay; (2) bad faith or dilatory motive on the part of the
movant; (3) repeated failure to cure deficiencies by amendments
previously allowed; (4) undue prejudice to the opposing party;
and (5) futility of amendment.  Id. at 182.

Plaintiff, an experienced merchant seaman, knew or
should have known that the U.S.N.S. Assertive was a government
vessel when he was injured in December, 2000 and thus when he
filed suit on May 16, 2002.  The U.S.N.S. designation refers to
United States Naval Ship and connotes "[c]ivilian manned ships,
of the Military Sealift Command or other commands, designated
'active status, in service' ...."  32 C.F.R. § 700.406(c).  On
October 15, 2002 the court held a status conference in chambers
which counsel for the plaintiff and counsel for then defendants
Maersk and Dyn attended.  Each attorney forwarded to the court
and to each other a Case Status Report in advance of the
conference on a designated form.  Question No. 11 on the form
stated, "Do you have any special comment to make or special
issues or problem to raise concerning the case?"  Counsel for
Maersk responded "Case arises under Public Vessels Act."  At the
status conference, as counsel for plaintiff concedes, counsel for
Maersk and Dyn clearly made known their views that the United
States, and not their clients, was the proper defendant.[3]  By

_____

3.  The Public Vessels Act, 46 U.S.C. § 781 provides:

A libel in personam in admiralty may be brought against
the United States, or a petition impleading the United
(continued...)

-10-

this time at the very latest, plaintiff's counsel clearly had in hand the necessary facts and sufficient coaching in the law so as to alert him to the responsibility of the United States for plaintiff's injuries.  At this point it was also at least a month and a half before the statute of limitations was to expire.

On January 22, 2003 and January 31, 2003 Dyn and Maersk respectively filed and served motions for summary judgment and supporting briefs.  Not surprisingly, each contended that plaintiff's exclusive remedy was against the United States. Still plaintiff did not take immediate action.  It was not until April 14, 2003 that plaintiff finally filed his motion to amend the complaint to add the United States as a defendant.  This was over two years and three months after he was injured on what he knew or should have known was a government vessel, eleven months after the original complaint had been filed, six months after plaintiff's counsel was alerted by opposing counsel that the United States was the proper party, over three months after the statute of limitations had expired for plaintiff's negligence and

---

3.(...continued)
     States, for damages caused by a public vessel of the
     United States, and for compensation for towage and
     salvage services, including contract salvage, rendered
     to a public vessel of the United States ....

The two-year statute of limitations in the Suits in Admiralty Act, 46 U.S.C. § 745, applies to claims under the Public Vessels Act 46 U.S.C. § 782.  Moreover, a lawsuit against the Government is the plaintiff's exclusive remedy.  46 U.S.C. § 745.

unseaworthiness claims, and almost three months after Maersk and Dyn moved for summary judgment.[4]

We recognize the salutary purpose of relation back as incorporated in Rule 15(c). Nonetheless, what our Court of Appeals has said in Nelson v. County of Allegheny, 60 F.3d 1010, 1015 n.8 (3d Cir. 1995) about Rule 17(a) concerning substitution of real parties in interest seems equally applicable here. These rules are "intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Id. Neither circumstance exists in this case. In any event, assuming that plaintiff initially made a mistake as defined under Rule 15(c)(3)(B), he surely must act with reasonable dispatch once the mistake is exposed. As the Supreme Court emphasized in Irwin in another context, equitable relief allowing a party to act outside a statutory time period should be granted "sparingly." Irwin, 498 U.S. at 96.

Considering the facts outlined above, we conclude that plaintiff was unduly dilatory in bringing his negligence and unseaworthiness claims against the United States for his December, 2000 injury. See Foman, 371 U.S. at 182. Any mistake about the United States was clearly no longer a mistake as of the

---

4. Plaintiff has complained that Maersk and Dyn were dilatory in producing the contracts they had with the Government. Even if so, Maersk and Dyn put plaintiff on notice at an earlier stage that the United States was the proper defendant. Before having the documentation in hand, plaintiff could have sought to add the United States as a party without at that point agreeing to the dismissal of Maersk and Dyn. Plaintiff may not wait until he has absolute certainty before moving to amend.

October 15, 2002 status conference, which as noted previously occurred at least a month and a half before the claim was time barred.  Plaintiff should have moved to amend before that deadline.  Rule 15(c) was never designed to allow parties to sleep on their rights.  What plaintiff is seeking to do here is "to perform an end-run around the statute of limitations that bars [his negligence and unseaworthiness] claims."  <u>Nelson</u>, 60 F.3d at 1015.

Accordingly, because Arthur's motion to amend came too late, we will grant the motion of the United States to dismiss his negligence and unseaworthy claims as barred by the two-year statute of limitations of the Suits in Admiralty Act, 46 U.S.C. § 745.

### III.

Arthur also has brought claims for maintenance and cure for his four injuries.  Under general maritime law, a member of a ship's crew who is injured while serving aboard the vessel is entitled to recover what is known as maintenance and cure.  "Maintenance is the living allowance for a seaman while he is ashore recovering from injury or illness.  Cure is payment of medical expenses incurred in treating the seaman's injury or illness."  <u>O'Connell v. Interocean Mgmt. Corp.</u>, 90 F.3d 82, 84 (3d Cir. 1996) (citations omitted).  This obligation exists "until the seaman has reached the point of maximum cure, that is until the seaman is cured or his condition is diagnosed as permanent and incurable."  <u>Id.</u> (citation omitted).  This duty "is

-13-

.a continuous one."  Loverich v. Warner Co., 118 F.2d 690, 693 (3d

Cir. 1941).

As with claims of negligence and unseaworthiness, the

two-year statute of limitations of the Suits in Admiralty Act

applies to an action for failure to pay maintenance and cure.   46

U.S.C. § 745; McMahon, 342 U.S. at 26.   "[A] continuous failure

to provide maintenance and cure must be regarded as giving rise

to successive breaches of contract with successive [two]-year

periods of limitation commencing anew from day to day."  Loverich

v. Warner Co., 36 F. Supp. 943, 947 (E.D. Pa. 1940).  As Judge

Frederick V. Follmer of this court wrote many years ago, a seaman

is "entirely within his rights in asserting his claim for

maintenance and cure for the two year period immediately

antedating the filing of the [claim]."  Kruhmin v. United States,

81 F. Supp. 689, 690 (E.D. Pa.), aff'd, 177 F.2d 906 (3d Cir.

1949).  Even if a seaman files an otherwise valid claim for

maintenance and cure more than two years after any injury, he "is

entitled to recover for the value of whatever maintenance and

cure the shipowner had the continuing duty to supply during the

two-year period prior to the date of filing the [claim]."

MacInnes v. United States, 189 F.2d 733, 736 (1st Cir.

1951)(citations omitted); see Rashidi v. Am. President Lines,

Ltd., Civ. A. No. 94-1029, 1994 WL 321031, at *4 (E.D. La.

June 2, 1994); Danstrup v. The Richmond P. Hobson, 112 F. Supp.

851 (E.D.N.Y. 1953).  But see Bullen v. United States, No. C93-

-14-

·757Z, 1993 WL 742685 (W.D. Wash. Nov. 3, 1993), <u>aff'd</u>, No. 93-36123, 1994 WL 192102 (9th Cir. May 16, 1994).

As explained above, a seaman is entitled to maintenance and cure until he has reached maximum cure or his condition is diagnosed as permanent and incurable. In his amended complaint, Arthur maintains that his knee was surgically repaired after his May 17, 1999 injury and that he was medically cleared to return to work in September, 1999. Likewise, he alleges that a physician performed knee surgery after his October, 1999 injury and cleared him to return to work in February, 2000. Therefore, he reached maximum cure more than two years prior even to the time he originally filed suit on May 16, 2002, without considering the longer period that had elapsed before he filed his motion to amend the complaint on April 14, 2003 when the statute is properly tolled. <u>See</u> <u>Advanced Power</u>, 801 F. Supp. at 1455 n.2. As a result, the clock has run on any claim for maintenance and cure as to these two injuries.

Arthur also has asserted a claim for maintenance and cure for his May 2, 2000 injury. He avers that he underwent knee surgery after his May 2, 2000 accident and was authorized to return to work in September, 2000. Since maintenance and cure is a continuing obligation, such a claim would not be barred by the statute of limitations if Arthur had sued the United States when he sued Maersk and Dyn. Here again, he did not move to amend his complaint until more than two years after September, 2000 when he

reached maximum cure as to his May 2, 2000 accident.   This claim
is now barred.

Finally, we must determine whether Arthur's claim for
his December, 2000 injury aboard the U.S.N.S. <u>Assertive</u> is stale.
His amended complaint alleges that since the time of his last
injury, his "left knee has deteriorated considerably, ultimately
developing into medial osteoarthritis.   Plaintiff Arthur has
recently had a high tibial osteotomy surgery, and his treating
physician has concluded that he will ultimately require a total
knee replacement."   He further avers that he has been unable to
return to work since his December, 2000 accident.   Accepting as
true the well-pleaded factual allegations in the amended
complaint, we read it as stating that Arthur has not yet reached
maximum cure for this injury.   Thus, the statute of limitations
does not prevent any claim for maintenance and cure which reaches
back to April 15, 2001, two years before Arthur filed his motion
to add the United States as a party.

IV.

The United States also moves for reconsideration of our
denial of its motion to dismiss for improper venue under Rule
12(b)(3) of the Federal Rules of Civil Procedure.   <u>See</u> Fed. R.
Civ. P. 12(b)(3).   The venue provision of the Suits in Admiralty
Act provides, in relevant part:

> Such suit shall be brought in the district
> court of the United States for the district
> in which the vessel or cargo charged with
> creating the liability is found within the
> United States, or if such vessel or cargo be
> outside the territorial waters of the United

-16-

> States, then in the district court of the
> United States for the district in which the
> parties so suing, or any of them, reside or
> have an office for the transaction of
> business in the United States ....

46 U.S.C. § 782. The United States, as the defendant, bears the
burden of establishing that venue is improper. <u>Myers v. Am.
Dental Ass'n</u>, 695 F.2d 716, 724-25 (3d Cir. 1982); <u>Simon v. Ward</u>,
80 F. Supp. 2d 464, 467-68 (E.D. Pa. 2000).

Arthur does not reside in the Eastern District of
Pennsylvania. Consequently, we must turn to the question of
where the vessel was found. In order to satisfy its burden in
connection with its original motion to dismiss, the United States
attached an affidavit of Cathy O'Connell ("O'Connell"), the
Claims Administrator for Maersk. She stated that the U.S.N.S.
<u>Assertive</u>, the vessel on which Arthur was injured in December
2000, was in Yokohama, Japan on May 16, 2002, the date he filed
his original complaint.

In their original briefs, Arthur and the Government
assumed that the words in the venue provision "the parties so
suing, or any of them" included the defendants. In its motion
for reconsideration, the Government contends that the words "the
parties so suing or any of them" refer only to the plaintiff or
plaintiffs. It relies on <u>Hoiness v. United States</u>, 335 U.S. 297
(1948), a case which it did not cite in its earlier papers. The
Supreme Court concluded that the venue provisions refer to the
libelant or plaintiff only and not to the United States which is
"ubiquitous throughout the land." <u>Id.</u> at 302.

-17-

The Government now supplies us for the first time with
the Declaration of James Beliveau, a project officer in the
Special Mission Ships Program for the Department of the Navy,
Military Sealift Command.  It adds a fact not before us
previously that the U.S.N.S. <u>Assertive</u> was outside the
territorial waters of the United States in the vicinity of
Yokohama, Japan on May 13, 2003, the day the amended complaint
was filed.  If we consider this declaration, venue is not
properly laid here because the vessel was not found in this
district at that time, and plaintiff was and is a resident of
Georgia.

Of the two dates, May 16, 2002 and May 13, 2003, we
think the proper one to be considered for venue purposes is
May 13, 2003.[5]  For the reasons stated previously, relation back
under Rule 15(c) is not applicable, and it was not until this
latter point in time that the United States became a party.

The problem with the Government's reliance on the
Beliveau declaration is that it comes too late.  This information
was clearly available to it when it filed its original motion to
dismiss.  Motions for reconsideration are not designed to allow
parties to come forth with supplemental facts clearly within
their knowledge at an earlier time.  <u>Harsco Corp. v. Zlotnicki</u>,
779 F.2d 906, 909 (3d Cir. 1985).

---

5.  No one argues that the proper date for venue purposes was
April 14, 2003, the date on which the motion to amend was filed.

-18-

We will not consider the Beliveau declaration.  Without it, the United States has not met its burden of proof as to the location of the U.S.N.S. <u>Assertive</u> on May 13, 2003.  Accordingly, it has not established that venue is improper in the Eastern District of Pennsylvania.

V.

In sum, we will grant the motions of the United States to dismiss the claims of plaintiff for negligence and unseaworthiness.  We will also grant its motions to dismiss with respect to plaintiff's claims for maintenance and cure except for his claim for his December, 2000 injury for the period from April 15, 2001 forward.  Finally, we will deny the Government's motion to dismiss for improper venue.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD ARTHUR                    :        CIVIL ACTION
                                 :
            v.                   :
                                 :
UNITED STATES OF AMERICA         :        NO. 02-2931

ORDER

AND NOW, this 15th day of September, 2003, upon consideration of the motion of plaintiff and the motion of the United States for reconsideration and for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1)  this court's Order of August 12, 2003, together with its accompanying Memorandum, are VACATED;

(2)  the motions of defendant United States to dismiss the claims of plaintiff for negligence and unseaworthiness are GRANTED;

(3)  the motions of defendant United States to dismiss the claims of plaintiff for maintenance and cure as to his May 17, 1999, October, 1999 and May 2, 2000 injuries are GRANTED;

(4)  the motions of defendant United States to dismiss the claim of plaintiff for maintenance and cure for his December, 2000 injury for any period prior to April 15, 2001 is GRANTED but otherwise DENIED; and

(5)   the motion of defendant United States to dismiss for improper venue is DENIED.

BY THE COURT:

_Harvey Bartle_ J.

# EXHIBIT C



GEORGIA

LEGEND
Northern District of Georgia
Middle District of Georgia

Augusta Division - Southern District
Brunswick Division - Southern District
Dublin Division - Southern District
Savannah Division - Southern District
Waycross Division - Southern District
Statesboro Division - Southern District

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EDWARD ARTHUR

                              Plaintiff,

               vs.

UNITED STATES OF AMERICA,

                             Defendant.

CIVIL ACTION 02-CV-2931

## AFFIDAVIT OF JAMES BELIVEAU

I, James Beliveau, hereby affirm as follows:

1.      I am a Project Officer in the Special Mission Ships (SMS) Program for the Department of the Navy, Military Sealift Command, Washington D.C.

2.      The USNS ASSERTIVE is an ocean surveillance ship operated under the SMS program office. As a project officer for SMS, I am familiar with the location of the USNS ASSERTIVE on May 16, 2002 and May 13, 2003.

3.      On May 16, 2002, the USNS ASSERTIVE was outside the territorial waters of the U.S. The vessel was underway performing a mission in the vicinity of Yokohama, Japan.

4.      On May 13, 2003, the USNS ASSERTIVE was also outside the territorial waters of the U.S. On that date, the vessel was underway performing a mission in the vicinity of Yokohama, Japan. She departed the Yokohama area on June 11, 2003 and headed for Pearl Harbor, HI. The USNS ASSERTIVE has remained in Pearl Harbor since June 25, 2003, where she is in the process of being decommissioned.

I hereby declare, pursuant to 28 U.S.C.A. 1746 under penalty of perjury, that the above affidavit is true and correct to the best of my knowledge.

JAMES BELIVEAU

Dated: August 21, 2003

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD ARTHUR,

                                    Plaintiff,

                Vs.                                         CIVIL ACTION 02-CV-2931

THE UNITED STATES OF AMERICA,

                                    Defendant.

## CERTIFICATE OF SERVICE

I, A. Robert Degen, Esquire, attorney for defendant, the United States of America,

hereby certifies that a true and correct copy of the foregoing Motion for Transfer was

served upon counsel of record on May _10_, 2006, via Federal Express as follows:

Brian P. McCafferty, Esquire
Provost Umphrey Law Firm LLP
1617 JFK Boulevard, Suite 640
Philadelphia, PA 19103


Date: _5/10/2006_                    By: _____
                                         A. Robert Degen, Esquire